AZONIA LOUISE PARKER, Plaintiff-Appellant, v. ROBERT WRIGHT, Acting Director of Public Aid, and Successor to Phil Bradley *et al.*, Defendants-Appellees.

Fifth District   No. 5—93—0539

Opinion filed June 10, 1994.

662

A. Robert Kassin, of Edwardsville, for appellant.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Karen Konieczny, Special Assistant Attorney General, of counsel), for appellees.

JUSTICE CHAPMAN delivered the opinion of the court:

Azonia Parker applied for and was denied medical assistance by the Pulaski County Department of Public Aid. The denial was upheld after an administrative hearing before the Illinois Department of Public Aid (the Department) and an appeal to the circuit court. The issue before this court is whether the Department's decision to deny Azonia Parker medical assistance is against the manifest weight of the evidence. We affirm.

On September 26, 1991, plaintiff applied for medical assistance benefits. She reported that she is disabled, is unemployed, and has no income. At that time Azonia Parker was 55 years old and lived with her husband, aged 59, and two children, ages 19 and 24. The Pulaski County Department of Public Aid (the County Department) forwarded a determination-of-disability packet to its determinations review unit on October 22, 1991. Included in this packet was a letter from Dr. Steven Beatty, dated October 17, 1991, in which Dr. Beatty wrote:

> "[Parker] is suffering from *** deep venous thrombosis. In addition, she has a chornic [sic] marked anxiety disorder with extreme lability of affect. Louise is capable of walking only short distances and because of her venous thrombosis disease cannot stan [sic] for any length of time. She is clearly unable to perform any meaningful work at this time. I do not expect this to improve any with therapy.

I am enclosing a copy of my previously filled out form. I understand it has been construed so as to imply that the patient was not disabled. Clearly this patient is unable to work at this time in any gainful way and any implication to the opposite is deeply regretted."

Also included in the determination-of-disability packet was a questionnaire completed by Dr. Beatty in which he diagnosed Parker as suffering from severe hypothyroidism, severe anemia, and deep venous thrombosis. Dr. Beatty reported that Parker was not confined to bed or chair and required no help in locomotion. He noted that she was only able to perform minimal self-help activities, but that her situation might improve in three to six months with treatment. The questionnaire contains no details about the date of onset of Parker's complaints, the duration of the conditions, and the current treatment for the conditions.

The determination-of-disability packet also included a form completed by Marla McAdoo, a County Department caseworker. McAdoo reported that Parker was currently ambulatory in her home only, but that she did not require the use of an appliance such as a cane or walker. McAdoo noted that Parker completed high school at the age of 20 and is a homemaker.

A third report included in the determination-of-disability packet is signed by a reviewing physician whose name is illegible. The report, dated November 11, 1991, states that the October 17, 1991, report was evaluated and that the records do not attest to conditions severe enough to result in 12 continuous months of disability. The reviewing physician found the hypothyroidism difficult to understand and believed that Parker would recover from the deep venous thrombosis within three to six months after treatment.

On November 27, 1991, plaintiff was notified that her application for medical assistance was denied on the ground that she did not meet the Department's definition of disabled. Parker appealed this decision. In addition to those documents which were before the County Department, additional medical records pertaining to Parker were forwarded to the Illinois Department of Public Aid.

The additional medical records include reports of follow-up care Dr. Beatty rendered for Parker's hypothyroidism, anemia, and deep venous thrombosis, between August 12, 1991, and December 12, 1991. The medical records state that on October 15, 1991, the deep venous thrombosis and hypothyroidism were doing relatively well. The record states that at the December 12, 1991, office visit, Parker's leg was entirely normal with very minimal chronic edema.

Also included in the medical records are documents pertaining to

Parker's July 26, 1991, through August 7, 1991, hospitalization: a discharge summary, a history and physical examination report, an X-ray report, and a report from an electrocardiogram taken July 26, 1991. Both the discharge summary and the history and physical examination report state that Parker was hospitalized because of pain and swelling in her right leg. It is stated that there was no definite evidence of deep venous thrombosis; however, such condition could not be definitively established or excluded because of the technical limitations of Parker's obesity which prevented examination of the veins in her legs. Parker was treated as though she had deep venous thrombosis. While hospitalized she was found to be profoundly hypothyroid. Her anemia was presumed to be due to hypothyroidism. Upon discharge, she was given medications and instructions regarding their use.

In a report dated February 21, 1991, a document signed by an unknown physician states that the medical reports are adequate. This physician concluded that Parker's hypothyroidism can be treated with medication and should not prevent her from working. The physician found that the deep vein thrombosis was successfully treated and that Parker shows no evidence of thrombophlebitis. The doctor noted that Parker has full ability to sit, bend, stoop, turn, and lift slight weights.

An administrative hearing was convened on April 1, 1992. The County Department's case consisted of the testimony of caseworker McAdoo. McAdoo identified Parker's application for medical assistance, the documents included in the determination of disability packets, and Parker's medical records. McAdoo testified that after Parker submitted her application for benefits, the determination review unit reviewed the medical records submitted and rendered its decision regarding Parker's ineligibility for medical assistance.

Azonia Parker testified that she is 55 years of age and 5 feet 7 inches tall and weighs over 250 pounds. She received her GED in the 1960's. The last time she worked outside the home was in the 1960's when she worked for three months as a teacher's aide for the Head Start Program. Parker terminated her employment because her daughter was ill and required care. Parker testified that she has no income and that she and her husband live on his social security benefits, which total approximately $758 per month, and a union benefit of $48 per month.

Parker testified that she has a thyroid problem for which she takes one aspirin a day in place of blood thinner medication which the doctor discontinued. She experiences numbness and pain in her fingers and toes but did not report numbness in her hand to her

physician. She cannot stand for more than 10 minutes at a time without her feet and legs swelling, and she requires assistance in ambulating. Parker believes she is presently unable to work because the doctor told her when she was discharged from the hospital in August of 1991 that she was not to do anything but light cooking and that she should sit occasionally and elevate her feet and legs. Parker did not state whether she was still under such orders from her physician at the time of the hearing.

She also testified that she experiences constant pain and swelling in her legs and hands. The pain radiates to her hips, knees, and arms, and the leg pain increases when she walks. She sits in a chair and lies down quite a bit at home to relieve her pain. She testified that she cannot sit comfortably in one spot for very long because it hurts her back and legs. Parker also testified that she experiences shortness of breath from walking around or getting nervous, but not when she is sitting and relaxing. She feels nervous and anxious quite often, but she has neither complained to a doctor nor received medical treatment for this condition.

Parker testified that she visits her doctor regularly and is currently taking aspirin and synthroid. She awakens at approximately 7 a.m. and retires for the evening at 5:30 or 6 p.m. She tosses and turns at night and sometimes will lie down for a few hours during the day. Parker prepares meals for the family, washes dishes once a day, and does the laundry. She testified that because of her condition she is unable to vacuum, scrub floors, dust, mop, or do yard work. She rarely reads but watches a lot of television. Parker's daughter drives Parker to the grocery store once every week or two.

Parker's landlord, Sammy Ulen, testified that he has known the Parkers for 10 years and has rented them their house for four years. Ulen testified that when the Parkers first moved into their house Alzonia was quite active. She would walk in the yard and do things around the house. During the past two years, however, Ulen has noticed a steady decline in Parker's activity. He sees Alzonia two to four times per month and has noticed that it takes her a long time to walk to the door when he knocks and that she no longer does much house or yard work.

On April 20, 1992, the Illinois Department of Public Aid issued its final administrative decision. This decision contained the hearing officer's findings of fact, which consisted largely of the medical information reviewed by the determinations review unit and brief summaries of the testimony taken at the hearing. The final administrative decision concluded that Azonia Parker did not prove that she is disabled, because the medical information failed to establish that

she has any severe impairment which will last for the requisite minimum period of 12 months. Accordingly, the Department upheld the denial of Parker's application for medical assistance.

Parker filed a complaint for administrative review with the circuit court. The only issue identified for review before the circuit court was whether the final administrative decision was contrary to the manifest weight of the evidence. On March 15, 1993, the lower court affirmed the final administrative decision and found that the Department's finding was not against the manifest weight of the evidence. Parker raises two issues for our review: (1) whether the Department used the proper standards in determining disability, and (2) whether under the proper standards, substantial evidence supports the Department's finding that Parker was not disabled.

It is undisputed that applicants for the type of medical assistance sought here must be determined disabled as defined by the Social Security Administration (SSA). (See 305 ILCS 5/3—4 (West 1992).) The SSA defines disability:

> "[D]isability [is] the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. To meet this definition, you must have a severe impairment, which makes you unable to do your previous work or any other substantial gainful activity which exists in the national economy. To determine whether you are able to do any other work, we consider your residual functional capacity and your age, education, and work experience." (20 C.F.R. § 404.1505 (1988).)

In evaluating disability, the SSA follows the procedure set out at 20 C.F.R. section 416.920 (1988). Basically this procedure is a five-step analysis.

> "(a) *Steps in evaluating disability.* We consider all material facts to determine whether you are disabled. ***
>
> (b) *If you are working.* If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.
>
> (c) *You must have a severe impairment.* If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.
>
> (d) *When your impairment(s) meets or equals a listed impairment*

*in Appendix 1.* If you have an impairment(s) which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.

(e) *Your impairment(s) must prevent you from doing past relevant work.* If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.

(f) *Your impairment(s) must prevent you from doing other work.* (1) If you cannot do any work you have done in the past because you have a severe impairment(s), we will consider your residual functional capacity and your age, education, and past work experience to see if you can do other work. If you cannot, we will find you disabled. (2) If you have only a marginal education, and long work experience (i.e. 35 years or more) where you only did arduous unskilled physical labor, and you can no longer do this kind of work, we use a different rule (see section 416.962)." 20 C.F.R. § 416.920 (1988).

■ Parker argues that the Department improperly utilized a stricter standard than is set forth by the SSA. The Department contends that Parker waived any complaint that it utilized an improper standard in reaching its decision. It is well settled that issues which are raised for the first time on appeal will not normally be considered by a court of review. (*Mittelman v. Witous* (1989), 135 Ill. 2d 220, 230, 552 N.E.2d 973, 978; *Tucker v. Illinois Power Co.* (1992), 232 Ill. App. 3d 15, 22, 597 N.E.2d 220, 226.) Contrary to the Department's argument, however, Parker did raise the issue below. In plaintiff's two memoranda of law filed in the circuit court, Parker set forth and argued the five-step analysis utilized by the SSA in determining one's disability. Thus, we cannot find that Parker waived the issue of whether the Department utilized an improper standard in making its determination.

An examination of the Department's final administrative decision reveals that the Department correctly sets forth the proper definition of disability as that term is defined at 20 C.F.R. section 416.905 (1988). The Department's decision then sets forth the guidelines the Department used in determining Parker's eligibility for assistance:

"(1) whether or not the claimant meets the listing of impairments in Appendix I which are presumed to be disabling without further evaluation; (2) if step 1 is not met, a determination of whether a severe impairment exists which precludes the claimant from

returning to his prior employment; and (3) if the impairment precludes the claimant from returning to his prior employment, a determination of the claimant's residual functional capacity to perform gainful employment based on the claimant's age, education, and work experience as provided for in Appendix 2, Section 404 of the Social Security Regulations."

Parker contends that it is clear from the analysis used by the Department that the Department improperly combined step (c) of the SSA analysis with step (f). Parker also argues that the Department misstates the standard for residual functional capacity in step (f) when it states that Parker must show she is disabled from "at least sedentary work."

A close examination of the final administrative decision reveals that the Department did follow the SSA analysis for determining disability, albeit not sequentially. Regarding section 416.920(b), whether the claimant is working, the Department found that Parker has no applicable work history. Given the record, this finding is in accord with the evidence where Parker's last employment was for three months in the 1960's.

Parker complains that the Department combines the factors stated in sections 416.920(c) and 416.920(f). We do not find this to be the case. In its final administrative decision the Department detailed what impairments Parker was alleged to have and whether the medical evidence supported a finding that those were in fact impairments preventing her from significantly engaging in basic work activities.

"The appellant claims to suffer from pain in all of her limbs, nervousness, that she cannot stand for more than 10 minutes and needs help to walk or climb stairs, and that, though she can write[,] she cannot use her hands to grip items. The medical records show that she was treated for deep vein thrombosis when she was hospitalized in July 1991. The medical records, however, do not show that [the] condition still exists or that it will last at least 12 months. The medical records also show that the appellant was diagnosed as having hypothyroidism. The medical records, however, do not show that this condition is associated with progressive exophthalmos or that there is any other resulting impairment as required in Appendix I, Section 9 for the endocrine system. Nor is there any medical evidence to show that the appellant's report of nervousness meets any of the qualifications for disability as set forth in Section 12 for mental disorders. Nor is there any medical evidence to show that the appellant's report of pain in her limbs meets the definition of disability as set forth in Section 1 for the musculoskeletal system. Also there is no

medical evidence to show that the appellant's report of shortness of breath is the result of a medical problem. Therefore, the appellant has not established that she meets the requirement of disability as set forth in Appendix I."

The Department determined that Parker did not have an impairment as listed in Appendix 1 of the SSA regulations and that she did not suffer from an impairment equal to a listed impairment. Because the Department concluded that plaintiff was not working and did not suffer from an impairment as specified under sections 416.920(c) and (d), the Department continued with a consideration of section 416.920(f). Although the analysis utilized in determining eligibility for assistance did not follow the literal sequence of section 416.920, the Department did utilize the significant factors of section 416.920 in its analysis, such that a different result would not have resulted had the exact sequential analysis been followed.

■ As for Parker's argument that the Department misstated the standard for residual functional capacity as requiring Parker to show she is disabled from "at least sedentary work," we disagree. The Department's finding to which Parker refers states:

"The medical information does not establish that the appellant has any severe impairment which *** would *** prevent her from substantial gainful employment in at least sedentary work."

Contrary to Parker's argument, the Department does not specify that it limited its analysis of her residual functional capacity to proof of her capacity to perform sedentary work. The final administrative decision provides in part:

"[A]ppellant is of advanced age at 55 years, has no applicable work history, has received a GED, and claims that she cannot do even sedentary work. The medical records show that she can do slight weight lifting, that she has full capacity for sitting, stooping, turning, and finger dexterity for both right and left hand; and that she has partial capacity for walking, standing, climbing, bending, pushing, and traveling."

Thus, the Department did consider all of the factors of section 416.920(f), residual functional capacity, age, education, and work history.

■ Parker next argues on appeal that the decisions of the Department and the circuit court are against the substantial weight of the evidence. The standard of judicial review for the court sitting in administrative review is to determine whether the findings of fact are contrary to the manifest weight of the evidence. (*Starkey v. Civil Service Comm'n* (1983), 97 Ill. 2d 91, 97, 454 N.E.2d 265, 267; *Eastman Kodak Co. v. Fair Employment Practices Comm'n* (1981), 86 Ill. 2d 60, 426 N.E.2d 877.) Appellant asks this court to apply a

"substantial evidence" standard of review to this case. This standard of review has been expressly rejected by the Illinois Supreme Court. (See *Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 358, 307 N.E.2d 371, 375; *Starkey v. Illinois Civil Service Comm'n* (1982), 105 Ill. App. 3d 904, 908, 435 N.E.2d 176, 179-80, *rev'd on other grounds* (1983), 97 Ill. 2d 91, 454 N.E.2d 265.) Therefore, applying the proper standard of judicial review, we examine the record to determine whether the trial court's conclusion that the administrative agency's findings and conclusions on matters of fact are not contrary to the manifest weight of the evidence is incorrect.

Parker argues that the Department erred in finding that she did not suffer an impairment. The Department found that Parker did not have an impairment which met or equaled an impairment as listed in Appendix 1 of the regulations (20 C.F.R. § 416.920(d) (1988)).

The list of impairments as provided in Appendix 1 (20 C.F.R. pt. 404, subpart P, app. 1 (1993 ed.)) is divided into 13 topics. The topic endocrine system encompasses claims of hypothyroidism. Regarding the diagnosis of Parker's hypothyroidism, the Department concluded:

"The medical records, however, do not show that this condition is associated with progressive exophthalmos or that there is any other resulting impairment as required in Appendix 1, Section 9 for the endocrine system."

The criteria necessary to prove an impairment of the endocrine system, pertinent to plaintiff's claims of hypothyroidism, are:

"9.02 *Thyroid Disorders.* With:

A. Progressive exophthalmos as measured by exophthalmometry; or

B. Evaluate the resulting impairment under the criteria for the affected body system.

9.03 *Hyperparathyroidism.* With:

A. Generalized decalcification of bone on X-ray study and evaluation of plasma calcium to 11 mg. per deciliter (100 ml.) or greater; or

B. A resulting impairment. Evaluate according to the criteria in the affected body system.

9.04 *Hypoparathyroidism.* With:

A. Severe recurrent tetany; or

B. Recurrent generalized convulsions." (20 C.F.R. pt. 404, subpart P, app. 1, at 399 (1993 ed.).)

Without reiterating the medical evidence which has already been set forth, we conclude that it does not indicate that Parker has progressive exophthalmos, nor does her condition fall within the criteria composing an impairment of the endocrine system. The evidence does not establish that Parker's condition is associated with progres-

sive exophthalmos, nor does it demonstrate that her hypothyroidism is the same as hypoparathyroidism, which is a recognized impairment. Even if Parker's condition qualifies as hypoparathyroidism, the evidence does not establish that she suffers from severe recurrent tetany or generalized convulsions or lenticular cataracts. The Department will not consider an impairment to be one listed in Appendix 1 solely because it has the diagnosis of a listed impairment. It must also have the findings shown in the listing for that impairment. 20 C.F.R. § 416.925(d) (1993).

Regarding Dr. Beatty's diagnosis of anemia, the medical evidence shows that he believed Parker's anemia was caused by her hypothyroidism. Impairments of the hemic system are listed in subpart 7.00 of Appendix 1; the medical facts adduced below do not fall within any of the categories of impairments in this section.

7.01 Category of Impairments, Hemic and Lymphatic System

7.02 *Chronic anemia (hematocrit persisting at 30 percent or less due to any cause).*

7.05 *Sickle cell disease, or one of its variants.*

7.06 *Chronic thrombocytopenia*

7.07 *Hereditary telangiectasia*

7.08 *Coagulation defects (hemophilia or a similar disorder)*

7.09 *Polycythemia vera (with erythrocythrombocytosis, splenomegaly, and leukocytosis or thrombocytosis).*

7.10 *Myelofibrosis (myeloproliferative syndrome).*

7.11 *Acute Leukemia*

7.12 *Chronic Leukemia*

7.13 *Lymphomas*

7.14 *Macroglobulinemia or heavy chain disease*

7.15 *Chronic granulocytopenia (due to any cause).*

7.16 *Myeloma (confirmed by appropriate serum or urine protein electrophoresis and bone marrow findings).*

7.17 *Aplastic anemias or hematologic malignancies (excluding acute leukemia).*

Therefore, the conclusion that Parker's anemia is not a qualifying impairment is not against the manifest weight of the evidence.

As for deep venous thrombosis, this condition does not appear in Appendix 1. Under impairments of the cardiovascular system, Appendix 1 provides:

"4.12 *Chronic venous insufficiency* of the lower extremity with incompetency or obstruction of the deep venous return, associated with superficial varicosities, extensive brawny edema, stasis dermatitis, and recurrent or persistent ulceration which has not healed following at least 3 months of prescribed medical or surgical therapy." (20 C.F.R. pt. 404, subpart P, app. 1, at 395 (1993 ed.).)

Once again, the medical evidence does not indicate that Parker's circumstances meet or equal the impairment listed. When an impairment does not appear on the list, then the applicant must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months. (20 C.F.R. § 416.925(a) (1993).) The Department concluded that, regarding Parker's deep venous thrombosis, the medical records do not indicate that the condition still exists or that it will last at least 12 months. Indeed, Dr. Beatty's record of Parker's November 5, 1991, office visit states, "exam shows no tenderness or signs of DVT." We cannot find that the Department's conclusion that the deep venous thrombosis did not qualify as an impairment is against the manifest weight of the evidence.

The Department also evaluated Parker's claims of pain, nervousness, and shortness of breath. These conditions are not supported in the medical records. Parker testified that she neglected to advise her doctor of these symptoms. A claimant's statements alone are not enough to establish that there is a physical or mental impairment. 20 C.F.R. § 404.1528 (1988).

> "The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity. *** For all others, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months." (20 C.F.R. § 416.925(a) (1993).)

The medical evidence failed to establish the existence of a severe impairment or combination of impairments. In addition, the evidence did not demonstrate that the conditions of which Parker complains have lasted or are expected to last for a continuous period of at least 12 months. Accordingly, we find that the circuit court's decision affirming the Department's determination is not against the manifest weight of the evidence.

Affirmed.

LEWIS, P.J., and WELCH, J., concur.