BEAR KAUFMAN REALTY, INC., Plaintiff-Appellant, v. SPEC DEVELOPMENT, INC., *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—92—1284

Opinion filed September 30, 1994.—Rehearing denied January 19, 1995.

William B. Kohn, of Chicago, for appellant.

Andrea Friedlander, of Chicago, for appellees.

PRESIDING JUSTICE TULLY delivered the opinion of the court: Plaintiff, Bear Kaufman Realty, Inc. (hereinafter referred to as Bear Kaufman), filed a five-count complaint in chancery against defendants, Spec Development, Inc. (hereinafter referred to as Spec), Pappageorge Haymes, Ltd., James Bolduc, and William and Kay Gurtin (hereinafter collectively referred to as the Gurtins). Subsequently, plaintiff filed a first amended complaint which alleged claims for breach of contract, fraud, and conspiracy and sought the imposition of a constructive trust. Pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—615 (now 735 ILCS 5/2—615 (West 1992))), the circuit court dismissed plaintiff's first amended complaint against Spec for failure to state a claim upon which relief may be granted. Plaintiff appeals from the order dismissing its claim against Spec pursuant to Supreme Court Rule 304 (134 Ill. 2d R. 304).

For the reasons which follow, we affirm.

## FACTUAL BACKGROUND

In August of 1988, Michael Kaufman, a Bear Kaufman principal and a licensed Illinois real estate broker, was engaged by the Gurtins. Kaufman accompanied the Gurtins to a two-unit townhome in a Spec development. The Gurtins admired the property and requested of Kaufman that he arrange a meeting with a Spec representative. In September of 1988, Kaufman contacted James Bolduc, a Spec agent, and indicated he had a "young investment banking couple" who could be interested in purchasing a unit. Bolduc then informed Kaufman that Spec would pay a "standard brokerage commission of ·5%" if a deal with "the young investment banking couple" or any other of plaintiff's clients was closed.

In September 1988, the Gurtins attended a developer's open house at the site. Although they signed the visitor's register, the Gurtins omitted listing plaintiff as their broker.

In October 1988, the Gurtins submitted an offer directly to Spec for the purchase of one of the townhomes. Spec reduced the selling price based upon the Gurtins' representations to Spec that they were "no longer working with a broker" and, therefore, no commissions would be due. This transaction was consummated in December 1988.

After both the Gurtins and Spec executed a sale contract, but prior to the closing, Kaufman contacted Bolduc and advised him that the Gurtins were the "young investment banking couple" he had referred to earlier. Kaufman advised Bolduc that he had originally directed the Gurtins to the Spec property and was thus entitled to a ·brokerage commission as previously agreed. Bolduc refused to pay plaintiff a commission, asserting that neither Kaufman nor the Gurtins had informed Bolduc or any other Spec agent of their previous brokerage arrangements and that, further, Spec had no reason to know that the Gurtins were the specific "young investment banking couple" Kaufman had referred to.

## OPINION

■ We note initially that plaintiff presented neither argument nor authority in support of its request that we consider the circuit court's dismissal of count II (fraud) and count III (conspiracy) contained in its first amended complaint. "[A] point raised but not argued or supported by citation to relevant authority fails to meet the requisites of Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)) and, therefore, is deemed waived." (*In re Marriage of Isaacs* (1994), 260 Ill. App. 3d 423, 431, 632 N.E.2d 228.) Thus, we find these issues waived. We review the dismissal of plaintiff's first amended complaint only as to count V (breach of contract) and count I (constructive trust).

The sole issue presented by this appeal is plaintiff's contention that the trial court erred in dismissing its first amended complaint. "In considering the trial court's dismissal of a complaint, the standard of review is *de novo*. We must determine whether the complaint, when viewed in a light most favorable to the plaintiff, alleges facts sufficient to establish a cause of action for which relief may be granted and all well-pleaded facts must be accepted as true." (*Harris v. Chicago Housing Authority* (1992), 235 Ill. App. 3d 276, 277-78, 601 N.E.2d 1011.) Thus, if there is any evidence in the record that supports plaintiff's position that it is entitled to a real estate commission, such evidence must be submitted to a jury.

■ Plaintiff is not basing its claim for commission on a written contract since clearly no such contract existed. Instead, plaintiff bases its claim for commission upon Spec's breach of an oral contract. A broker is entitled to assert a claim for and recover commissions upon an oral contract (*Stone v. Brown* (1987), 162 Ill. App. 3d 405, 515 N.E.2d 384) or under the theory of *quantum meruit* (*Doss v. Kirk* (1956), 8 Ill. App. 2d 536, 132 N.E.2d 49).

■ The general rule, and that followed in Illinois, is that a broker is entitled to a commission if he is the procuring cause of a consummated transaction which he had authority to negotiate. (*Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.* (1980), 87 Ill. App. 3d 480, 408 N.E.2d 1069; *Pietka v. Chelco Corp.* (1982), 107 Ill. App. 3d 544, 437 N.E.2d 872.) This rule applies even if the final negotiations are conducted through the seller, who in order to make a sale accepts a price lower than that stipulated to the broker. (*Hafner v. Herron* (1896), 165 Ill. 242, 46 N.E. 211; *McConaughy v. Mahannah* (1888), 28 Ill. App. 169.) A broker is deemed to be the procuring cause if he brings together the parties who then consummate the transaction (*Chiagouris v. Continental Trailways* (1964), 50 Ill. App. 2d 196, 200 N.E.2d 399; see also *Cowan v. Day* (1910), 156 Ill. App. 105; *Adams v. Decker* (1889), 34 Ill. App. 17) or if he is instrumental in the ultimate consummation of the deal. *Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.* (1980), 87 Ill. App. 3d 480, 485, 408 N.E.2d 1069; *Van C. Argiris Co. v. Caine Steel Co.* (1974), 20 Ill. App. 3d 315, 314 N.E.2d 361; *Doss v. Kirk* (1956), 8 Ill. App. 2d 536, 132 N.E.2d 49.

Conversely, a broker may be deemed the procuring cause because of the negotiations he conducts in arranging the transaction, although he had not initially introduced the parties to the transaction or personally introduced them to one another. (*Chiagouris v. Continental Trailways* (1964), 50 Ill. App. 2d 196, 198, 200 N.E.2d 399; *Burns v. Sullivan* (1915), 192 Ill. App. 127.) Additionally, a bro-

ker has been held to be the procuring cause even if others participated in the negotiations (see *Cole v. Brundage* (1976), 36 Ill. App. 3d 782, 344 N.E.2d 583); the transaction was concluded without his presence or knowledge (*Hafner v. Herron* (1896), 165 Ill. 242, 46 N.E. 211; *Day v. Porter* (1896), 161 Ill. 235, 43 N.E. 1073); he did not personally accompany a customer to a meeting with the principal (*Chicago Title & Trust Co. v. Guild* (1946), 329 Ill. App. 374, 68 N.E.2d 615); or where the transaction is effectuated through information which he disseminates (*Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.* (1980), 87 Ill. App. 3d 480, 485, 408 N.E.2d 1069; *Doss v. Kirk* (1956), 8 Ill. App. 2d 536, 132 N.E.2d 49).

The procuring cause standard has also been adopted by courts to imply a contract between a broker and a seller where the broker has found and produced a purchaser who was ready, willing and able to perform but where negotiations continue beyond the expiration date of the commission agreement between the broker and the seller. (*Arthur Rubloff & Co. v. Comco Corp.* (1978), 63 Ill. App. 3d 362, 380 N.E.2d 15; see also *Federated Petroleum Services, Inc. v. Daniels* (1965), 56 Ill. App. 2d 236, 205 N.E.2d 741; *Griswold v. Pierce* (1899), 86 Ill. App. 406.) "[A] court may look beyond the formalities of a listing agreement to provide a fair and equitable result." (*Bennett & Kahnweiler Associates v. Ratner* (1985), 133 Ill. App. 3d 316, 321, 478 N.E.2d 1138.) These holdings all reflect judicial recognition of the inequity of allowing a principal to enjoy the benefits derived from a broker's services without meeting the concomitant burden of payment of the broker's commission. Thus, it is the policy of Illinois law to protect a broker who has been employed or authorized to act and who, in good faith, has so acted. *Arthur Rubloff*, 63 Ill. App. 3d at 369.

This general rule has been followed in numerous Illinois decisions. However, our courts have also recognized a limited exception to the general rule where the seller, *after due inquiry and acting in good faith*, contracts directly with a purchaser, whose status as the broker's prospect is unknown to the seller, at a reduced price acting on the belief that he would not have to pay a brokerage commission. In such cases, the broker would not be entitled to a commission even if he was the procuring cause. *Stone v. Kreis* (1916), 202 Ill. App. 43.

In *Stone*, the seller of a parcel of land contracted with a broker for a two-year term to sell the property. During that time, the broker facilitated negotiations between the seller and a prospective purchaser. At the expiration of the term, no agreement having been reached, both the seller and the customer notified the broker that they intended to abandon all negotiations. Subsequently, the same

customer, in an effort to acquire the property at a reduced price, engaged a third party to secretly negotiate directly with the seller. A sale between the seller and this third party was ultimately consummated. Thereafter, the third party conveyed the property to the original prospective purchaser. The broker demanded a commission. The appellate court held the broker was not entitled to a commission even if he was the procuring cause if the seller was acting in good faith, without knowledge of the fraud in his negotiations with the third party. The *Stone* court concluded that the element of good faith on the seller's part is a material consideration to the ultimate disposition of the case. In so holding, the *Stone* court stated:

"[Where] defendant, on due inquiry, was led to believe that he was dealing with an entirely new party and was not to pay commissions and was thereby induced to sell at such lower price, we think the element of good faith is material. It would not only seem unjust if he acted in good faith in the transaction that he should be mulcted for damages in the form of commissions because of bad faith and deceit practiced upon him by plaintiff's customer, but to present the question *** whether *** plaintiffs under such circumstances could be said to be the procuring cause at the sale." *Stone*, 202 Ill. App. at 47.

See also *Mears v. Stone* (1892), 44 Ill. App. 444 (a seller of real estate and a broker are bound to exercise the utmost good faith toward each other).

The same rule of law is found in the Restatement (Second) of Agency:

"*Where principal does not know broker to be a cause.* If care upon the part of the principal would not have revealed the connection between the broker and the customer, and the principal makes a lower price because of his belief that he would not have to pay commissions, the broker's compensation is reduced to the extent that the price has been thereby lowered, as where the customer acts through a 'straw' who purports to be buying on his own account." Restatement (Second) of Agency § 448, Comment *f* (1958).

Additionally, other jurisdictions have rendered decisions consistent with the holding in *Stone. McGauley v. Mercury Mills of Georgia, Inc.* (1977), 557 F.2d 1092 (held the agent must prove that the owner sold the property with knowledge that the agent had procured the ultimate purchaser, *viz.*, show the seller acted in bad faith); *Tucker v. Green* (1964), 96 Ariz. 371, 374, 396 P.2d 1, 3 ("it would appear that in fairness to his principal the broker should advise his principal that he had produced the prospective purchaser and that his commission would be one of the things which his principal could

then take into consideration in determining whether he would conclude a sale with the prospective purchaser"); *Hamilton v. Taylor* (Ky. Ct. App. 1952), 249 S.W.2d 730 (duty found in a nonexclusive broker to inform the principal, as an owner ignorant of the fact, that a purchaser has been procured, to the end that the owner might not be misled into accepting a reduced price); *Dragone v. Dell'Isola* (1954), 332 Mass. 11, 122 N.E.2d 892 (owner could not be found to have acted fraudulently or in bad faith when he agreed to sell to the purchaser before he knew that the broker had dealt with him, and there was no ground for recovery of commissions by the broker); *Las Vegas Realty & Insurance Co. v. Sparks* (1923), 29 N.M. 77, 218 P. 345 (where a broker failed to disclose to his principal the name of a prospective customer, and thereafter the owner, being unaware of any claim upon him for a commission, sold the property to such prospective purchaser at an amount considerably smaller than that at which he had listed it with the broker, relying upon such exemption from payment of commission, the broker was precluded from recovery); *Mobley v. Tinsley* (1923), 31 Ga. App. 259, 120 S.E. 437 (where broker failed to inform seller that he was negotiating with a purchaser procured by broker, and seller proceeded with the negotiations upon the assumption that no commissions would be due and thereby accepted a greatly reduced sale price, the broker could not recover his commission); see also *King v. Dean* (1969), 19 Ohio St. 2d 17, 249 N.E.2d 45; *Pate v. Milford A. Scott Real Estate Co.* (1974), 132 Ga. App. 49, 207 S.E.2d 567.

■ Plaintiff urges this court to fashion a rule where the seller would be required to obtain a letter of indemnification from any purchaser who claims not to be represented by a broker. However, we believe that to do so would be contrary to the basic tenets of agency law. The relationship which exists between a principal and agent for the sale or purchase of real property is a fiduciary agency. (*Moehling v. W.E. O'Neil Construction Co.* (1960), 20 Ill. 2d 255, 170 N.E.2d 100.) Further, it is the agent who is duty bound to apprise his principal as to any and all developments and pertinent information bearing on the subject matter of the agency relationship. (*Moehling*, 20 Ill. 2d at 267.) Certainly, notifying a seller of a potential purchaser's identity is not an unreasonable thing to expect of a broker. To hold that a seller must take preventative steps to protect himself against possible claims from his own agent would allow a broker to benefit from his own breach of fiduciary duty. We decline to do so.

The broker is in a superior position to safeguard himself from an unscrupulous purchaser. He may either enter into a formal agree-

ment with the purchaser as an exclusive buyer's broker or simply telephone the seller and notify him of the prospect's identity. Moreover, the seller has no effective means to make a determination whether, in fact, a broker was in some way instrumental in effectuating the sale. This is particularly true where, as in this case, the seller has not executed an exclusive listing agreement with a brokerage firm but rather is dealing openly with several brokers and their prospective customers. Therefore, we hold that it is the broker who is responsible for taking the necessary steps to inform the seller of the identity of any prospective purchaser he procured. Failure to do so is a breach of his fiduciary duty and may preclude the broker's recovery of a commission, regardless of efforts exerted by him as a procuring cause of the sale.

■ Here, it is uncontroverted that Kaufman introduced the Gurtins to the property. There is no dispute that an oral agreement existed between plaintiff and Spec regarding payment of a commission in the event plaintiff procured a purchaser for the property. However, it is equally clear that plaintiff breached its fiduciary obligations to Spec when Kaufman failed to disclose relevant information bearing directly on the sale of the subject property: the identity of the clients. It is this breach which induced Spec to negotiate directly with the Gurtins and to reduce the price of the property in the belief that it would owe no commission.

Further, we believe Spec was justified in relying upon the Gurtins' representations that "they were no longer working with a broker" since there were no indications to the contrary. The register from the open house did not indicate the Gurtins were represented by a broker and the Gurtins approached and negotiated directly with Spec. We do not think it is reasonable to presume that Spec would have associated the "young investment banking couple" with the Gurtins, even upon learning of their occupation. Moreover, there is no allegation by plaintiff or any evidence in the record which would indicate that Spec was acting in concert with the Gurtins to intentionally deprive plaintiff of its commission. Therefore, we believe Spec conducted the negotiations with the Gurtins in good faith under the circumstances and with information then available to it.

In conclusion, we hold Spec is not liable for commissions to plaintiff even though plaintiff has proven that it was the procuring cause of the sale. Each essential element of the exception to the general rule has been met. Spec, after due inquiry and acting in good faith, contracted directly with the Gurtins, whose status as plaintiff's prospect was unknown to Spec, at a reduced price acting on the belief that he would not have to pay a brokerage commission.

Additionally, plaintiff breached its fiduciary obligations to Spec and Spec has demonstrated that breach to be the reason plaintiff is now precluded from recovery of any commissions. Thus, the trial court correctly dismissed plaintiff's first amended complaint count V (breach of contract).

■ Plaintiff next contends that the trial court erred in dismissing its claim for the imposition of a constructive trust. The standard for the imposition of a constructive trust was set forth in *Perry v. Wyeth* (1962), 25 Ill. 2d 250, 184 N.E.2d 861, wherein our supreme court held:

> "A constructive trust is one raised by operation of law as distinguished from a trust created by express agreement ***. It is imposed by a court *** to prevent a person from holding for his own benefit an advantage which he has gained by reason of a fiduciary relationship or by fraud. Such a trust arises only when fraud is proved or when advantage is taken of a fiduciary relationship ***. *** The proof of such fiduciary relationship must be so clear and convincing and so strong, unequivocal and unmistaking as to lead to but one conclusion." (*Perry*, 25 Ill. 2d at 253.)

Mere breach of contract does not give rise to a constructive trust. *Evans v. Berko* (1951), 408 Ill. 438, 97 N.E.2d 316.

While we have acknowledged that the nature of the relationship between plaintiff and Spec was a fiduciary one, we have also concluded that it was plaintiff and not Spec who breached the duties implicit in that agency relationship. Furthermore, Spec has not been unjustly enriched as a result of its contract with the Gurtins. Spec reduced the sales price of the property in an amount substantially equal to that which it would have been required to pay as a commission. Therefore, Spec retained nothing by which it was unjustly enriched.

Additionally, we do not believe plaintiff has put forth enough evidence to justify the imposition of a constructive trust. We note the absence of allegations of bad faith on the part of Spec or any evidence of same in the record. Without a clear showing of fraud by Spec, no constructive trust can be imposed on its property. For the foregoing reasons, we hold that the trial court correctly dismissed plaintiff's claim for imposition of a constructive trust as contained in count I of the first amended complaint.

In light of the foregoing, the judgment of the circuit court of Cook County is affirmed in all respects.

Judgment affirmed.

CERDA and GREIMAN, JJ., concur.