SCHALLER, LESLIE A. v. WEIER, RAYMOND J., et al. - rec'd 01/25/01

(text box: 1) NO. 5-99-0695

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

LESLIE A. SCHALLER, )  Appeal from the     

)  Circuit Court of

     Plaintiff-Appellant, )  St. Clair County.

)

)  No. 94-L-1191

)

RAYMOND J. WEIER and GLORIA L. )

WEIER, )  Honorable 

)  Patrick M. Young,

     Defendants-Appellees. )  Judge, presiding. 

________________________________________________________________________

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

The plaintiff, Leslie A. Schaller, brought an action against the defendants, Raymond Weier and Gloria Weier, for the payment of a broker's commission.  After a bench trial, the judge found in favor of Raymond Weier and Gloria Weier.  On appeal, Leslie Schaller contends that (1) the court denied her due process by failing to provide her with a jury trial, (2) the court erred in denying her motion for recusal and in failing to treat her motion for recusal as a motion for substitution as of right, and (3) the court's decision denying her commission was against the manifest weight of the evidence and should be reversed.  For the following reasons, this court concludes that the plaintiff waived the jury-trial argument, that both the denial of the motion for recusal and the failure of the judge to consider the motion for recusal as a motion for substitution as of right were proper, and that the judgment of the trial court denying the payment of a commission was not against the manifest weight of the evidence.

FACTS

In 1964, Raymond Weier and Gloria Weier were married.  In 1965, they bought a nursing home, known as "Weier Retirement & Nursing Home."  They owned both the business and the property as joint tenants.  Although Gloria Weier actively participated in the running of the business for the first few years by paying bills, answering the telephone, and performing additional clerical duties, Raymond Weier was the primary operator of the nursing home. 

Early in 1991, Leslie Schaller approached Raymond Weier about the possible sale of the nursing home.  On May 24, 1991, Raymond Weier and Leslie Schaller entered into a "Commercial Listing Agreement" (Agreement), which provided that she would represent him in the attempt to locate a buyer for the nursing home.  Although Gloria Weier knew of the Agreement, she was not a signatory or a party to it.

The Agreement stated that Raymond Weier would pay Leslie Schaller a commission of 4% of the sale price upon closing and that the ending date of the Agreement was July 24, 1991.  Both Raymond Weier and Leslie Schaller agreed to an extension until September 15, 1991, as evidenced by the handwritten notation and initials on the Agreement.  It also appears that the parties extended the Agreement until March 31, 1992, again evidenced by handwritten notation and Raymond Weier's initials. 

Leslie Schaller testified that she requested Raymond Weier to initial additional extensions but that he refused and told her it wasn't necessary."  He said, "I'm not going to screw you out of your hundred thousand dollars ***.  You don't have to worry about that ***."  Raymond Weier denied making those statements. 

It is clear that Leslie Schaller introduced Raymond Weier to F. Michael Bridges (Mike Bridges), the eventual buyer of the nursing home.  There is some question, however, as to when this introduction took place.  Leslie Schaller insists that the introduction occurred prior to the ending date of the Agreement, including any extensions.  Raymond Weier appears to be unclear as to when he first met Mike Bridges.  He testified that he did not remember meeting Mike Bridges in 1992, although it is possible he may have been a party to a telephone conversation with Mike Bridges and Leslie Schaller around Christmas 1992.  He also testified that he may have met Mike Bridges in 1993 and that he did not meet Mike Bridges until 1994. 

Leslie Schaller testified that she continued to have "active participation" in the negotiations between Raymond Weier and Mike Bridges until February 1994.  This participation took the form of meetings with both parties and their attorneys to arrange financing.  She testified that she also picked up and delivered financial statements and other paperwork.

Mike Bridges was the only potential buyer ever interested in the sale, with one exception.  There was a brief attempt to arrange a purchase by Leslie Schaller either on her own behalf or on the behalf of some other person, which she undertook in March 1994.  This took place during a time when Mike Bridges was having problems obtaining the financing necessary to make the purchase. 

Raymond Weier and Gloria Weier closed the deal with Mike Bridges, his wife, Billie Jo Bridges, and their corporate entity, "Swansea Care Center, Inc.," on June 16, 1994.  Leslie Schaller was not notified of the closing and therefore was not present.  Raymond Weier also did not notify Leslie Schaller that he was not going to pay her the commission.  In fact, within the "Asset Purchase Agreement," the provision entitled "Commission to Realtor," which required Raymond Weier to pay Leslie Schaller the commission, had a handwritten addition stating "Omit RJW."  This was the first indication that Raymond Weier refused to pay Leslie Schaller her commission.  When Leslie Schaller heard of the closing from Mike Bridges' attorney, she requested her commission, and Raymond Weier refused to pay it.

Raymond Weier and Gloria Weier had made an oral agreement prior to the closing that they would split the proceeds of the sale evenly between them.  It is unclear, and unimportant, whether or not this agreement was made in contemplation of divorce.  Raymond Weier and Gloria Weier were divorced on June 12, 1995.  It appears that the split of the proceeds of the sale was effectuated.

Leslie Schaller's original counsel of record filed a jury demand on December 13, 1994, but he failed to pay the jury fee of $180 to the clerk of the circuit court as required by the local rules for the 20th Judicial Circuit.  Subsequently, Leslie Schaller's current counsel was notified on February 11, 1999, that, because the jury fee had never been paid, the cause would be reassigned to the nonjury docket for a bench trial.

A bench trial was held on September 16, 1999.  At the beginning of the trial, Judge Young disclosed on the record that upon seeing Raymond Weier, he recognized him as one of the persons he had served with on a board of directors for a local charitable organization.  The judge then offered Leslie Schaller an opportunity to discuss this information with her counsel.  Counsel then expressed to the judge that his client had concerns about the familiarity between the judge and Raymond Weier, and counsel requested that the judge recuse himself.  Defense counsel objected and the judge denied Leslie Schaller's motion to recuse.  When the trial was concluded, the judge found in favor of Raymond Weier and Gloria Weier and against Leslie Schaller.  This timely appeal followed.

ANALYSIS

1. Jury Trial

Those matters not raised at the trial court level are normally considered waived and are not to be considered on appeal.  
Parker v. Wright
, 262 Ill. App. 3d 661, 667, 635 N.E.2d 138, 142 (1994).  When the court notified Leslie Schaller of her failure to pay the jury fee and reassigned the cause for a bench trial, Leslie Schaller made no argument that this violated her right to due process.  Nothing in the record shows that Leslie Schaller ever raised this matter at the trial level, and therefore, we conclude that she has waived this argument.

Assuming 
arguendo
 that Leslie Schaller preserved the argument, the resulting bench trial was still appropriate, because she failed to make a valid jury demand.  In 
People ex rel. Mehorczyk v. Kelley
, the trial court allowed the action to proceed before a jury despite the defendant's failure to pay the jury fee at the time of filing the jury demand.  
People ex rel. Mehorczyk v. Kelley
, 137 Ill. App. 3d 1074, 1077, 485 N.E.2d 588, 590 (1985).  The court analyzed the statute at issue and explained that paying the fee at the time of filing the demand was mandatory.  
Kelley
, 137 Ill. App. 3d at 1077, 485 N.E.2d at 590.  The court, relying on 
Hunt v. Rosenbaum Grain Corp.
, 355 Ill. 504, 189 N.E. 907 (1934), concluded that the trial court's acceptance of the late payment was improper because the defendant never provided a reasonable excuse for the failure to pay at the time the statute provided.  
Kelley
, 137 Ill. App. 3d at 1077, 485 N.E.2d at 590. 

Leslie Schaller never attempted to pay the fee late.  If she had attempted to pay it  upon the notification of the failure to pay, then both the timeliness of payment and the reasonableness of excuse would be issues.  However, because there appears to have been no attempt to pay the fee, it is not necessary for this court to address either of these  issues.

2. Recusal

Supreme Court Rule 63(C) (155 Ill. 2d R. 63(C)) governs the recusal of a judge.  This statute requires that the judge disqualify himself or herself where there is personal bias or prejudice concerning a party.  155 Ill. 2d R. 63(C)(1)(a).  Leslie Schaller requested the judge to recuse himself after he listened to the judge's statement about his previous interactions with Raymond Weier.  The judge considered the motion for recusal and then denied it based on his belief that the previous contact with Raymond Weier was so minimal that it would not create any bias or prejudice against the party opposing Raymond Weier.  Leslie Schaller accepted this decision and continued with the trial.  Now, Leslie Schaller claims not only that the denial of the motion to recuse was error but also that the motion to recuse should have been considered as a petition for substitution of judge as of right.

Under the substitution-as-of-right provision, each party is allowed one substitution of judge without showing cause.  735 ILCS 5/2-1001(a)(2)(i) (West 1998).  This motion must be made in a timely manner.  735 ILCS 5/2-1001(a)(2)(ii) (West 1998).  Generally, this requires that the motion must be made before the judge has made any substantive rulings in the case.  
Beahringer v. Hardee's Food Systems, Inc.
, 282 Ill. App. 3d 600, 601, 668 N.E.2d 614, 615 (1996).  If the motion is untimely (
i.e.
, made after the judge has made a substantial ruling), the party must show prejudice in order to make a motion for substitution for cause.  735 ILCS 5/2-1001(a)(3) (West 1998).

Although it is true that (1) Leslie Schaller made her motion at the earliest practical moment and (2) the substitution-as-of-right provisions are to be liberally construed in order to effect the right of substitution rather than to defeat it (
Nunes v. Northwest Hospital
, 253 Ill. App. 3d 337, 342, 625 N.E.2d 376, 380 (1993)), the only motion made by Leslie Schaller was a motion for recusal.  Therefore, we conclude that both the denial of the motion for recusal and the failure of the judge to consider the motion for recusal as a motion for substitution as of right were proper.

3. Breach of Contract

A broker who brings an action to recover a commission must set forth facts that show his or her entitlement to that commission.  
Wilmette Real Estate & Management Co. v. Luvisi
, 172 Ill. App. 3d 232, 236, 526 N.E.2d 477, 480 (1988).  The right to a commission must be based on the broker's employment to provide services for which the commission is claimed and employment by the person from whom the commission is sought.  
Luvisi
, 172 Ill. App. 3d at 236, 526 N.E.2d at 480.  However, before a broker can recover any commission, it must be proved that the broker either (1) sold the property in question or (2) 
within the time of the broker's authority
, he or she procured a buyer ready, willing, 
and able
 to purchase at the stipulated terms.  
Luvisi
, 172 Ill. App. 3d at 237, 526 N.E.2d at 480.  This is known as the "procuring cause standard."

Obviously, there is a dispute between the parties as to the timing of both the last extension of the Agreement and the first contact between Mike Bridges and Raymond Weier.  These disputes, however, are to be resolved by the trier of fact, as they were in this case.  An examination of the evidence from Raymond Weier's standpoint supports the conclusion that the last extension ended in March 1992 and that the first contact between Mike Bridges and Raymond Weier was around Christmas 1992.  Although Leslie Schaller does not agree with this finding, we conclude that such a finding is not against the manifest weight of the evidence. 

A buyer is deemed to be ready, willing, and able to purchase if he or she (1) has agreed to buy the property and (2) has sufficient funds on hand or is able to obtain the necessary funds within the time set by the contract.  
Hallmark & Johnson Properties, Ltd. v. Gadea
, 218 Ill. App. 3d 921, 926, 578 N.E.2d 1180, 1184 (1991).  If the sale is dependent on the buyer obtaining a loan or some other contingency, then the broker's entitlement to the commission is also dependent upon that condition being met.  
Hallmark & Johnson Properties, Ltd.
, 218 Ill. App. 3d at 926, 578 N.E.2d at 1184.  

A broker has been found to be the procuring cause of a consummated transaction even when the transaction was concluded without the presence or knowledge of the broker.  
Bear Kaufman Realty, Inc. v. Spec Development, Inc.
, 268 Ill. App. 3d 898, 901-02, 645 N.E.2d 244, 247 (1994).  A broker has also been found to be the procuring cause when the broker found and produced a ready, willing, and able buyer but negotiations continued past the ending date of the agreement between the broker and the seller.  
Bear Kaufman Realty, Inc.
, 268 Ill. App. 3d at 902, 645 N.E.2d at 247. 

The rationale behind these holdings is that it is the policy of Illinois law to protect brokers who were employed to act and in good faith do act.  
Bear Kaufman Realty, Inc.
, 268 Ill. App. 3d at 902, 645 N.E.2d at 247.  Courts rely on the policy that it is inequitable for a seller to enjoy the benefits from a broker's services without paying a commission.  
Bear Kaufman Realty, Inc.
, 268 Ill. App. 3d at 902, 645 N.E.2d at 247.  

However, it is not enough that the broker was the first to bring the property to the attention of the buyer.  
Luvisi
, 172 Ill. App. 3d at 237, 526 N.E.2d at 480.  The broker must also show that the sale was the proximate result of his or her efforts.  
Luvisi
, 172 Ill. App. 3d at 237, 526 N.E.2d at 480-81.  

Leslie Schaller and Raymond Weier had an agreement that she was to act as his agent in selling the nursing home and he, in turn, was to pay her a commission.  The ending date of the Agreement was extended at least twice, although the parties disagree on this point.  Leslie Schaller introduced Raymond Weier to the eventual buyer, Mike Bridges.  However, Leslie Schaller has failed to show that Mike Bridges was ready, willing, and able to purchase at that time.  In fact, she doubted his ability to receive financing, to the extent that she considered purchasing the nursing home herself.  

In order to reverse the decision of the trial court on this issue, we would have to conclude that the judgment was against the manifest weight of the evidence.  
In re Petition to Disconnect Certain Territory from Rutland & Dundee Townships Fire Protection District
, 306 Ill. App. 3d 676, 684, 714 N.E.2d 592, 597 (1999).  We conclude that the trial court's decision declining to award the commission was proper and not against the manifest weight of the evidence, and therefore, we affirm the judgment.

Since we have concluded that the trial court was proper in declining to require Raymond Weier to pay the commission to Leslie Schaller, it is unnecessary for us to analyze the unjust enrichment claim against Gloria Weier presented by Leslie Schaller.  Clearly, if the party who contracted with Leslie Schaller is not required to pay the commission, the spouse of that party should not be required to pay.

CONCLUSION

This court concludes that the jury-trial argument was waived, that both the denial of the motion for recusal and the failure of the judge to consider the motion for recusal as a motion for substitution as of right were proper, and that the judgment of the trial court denying the payment of a commission was not against the manifest weight of the evidence.

The judgment of the trial court is affirmed.

Affirmed.

WELCH and GOLDENHERSH, JJ., concur.

                                      

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 02/14/01.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.