# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-2592

MOHAMMED H. MIRZA d/b/a SAMIR FINANCIAL SERVICES, INC.,

*Plaintiff-Appellant,*

*v.*

FLEET RETAIL FINANCE, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 0566—**Robert W. Gettleman**, *Judge.*

ARGUED DECEMBER 3, 2003—DECIDED JANUARY 12, 2004

Before FLAUM, *Chief Judge*, and POSNER and WILLIAMS, *Circuit Judges.*

FLAUM, *Chief Judge.* In 2001, Mohammed Mirza filed suit against Fleet Retail Finance seeking a $750,000 commission for allegedly acting as a loan finder for Fleet's $150,000,000 loan agreement with Phar-Mor, Inc. The district court granted Fleet summary judgment on the issue of whether Fleet breached its oral contract to pay Mirza and found that Mirza could not show that he was the procuring cause of the transaction between Fleet and Phar-Mor. Mirza now appeals.

## I. Background

Plaintiff-Appellant Mohammed Mirza is a loan finder. Loan finders match commercial borrowers seeking financing to willing lenders. Unlike loan brokers, loan finders simply make introductions between the partie—they do not become involved in the negotiations. Customarily, loan finders require only an oral promise of payment from their clients.

In 1998, Mirza introduced Barbara Anderson of Fleet Retail Finance (then known as Bank of Boston) to Shankar Krishnan, the Chief Financial Officer of Phar-Mor, Inc. Loan negotiations between Fleet and Phar-Mor took place for several months, but no agreement was reached at that time. In the next two years, both Barbara Anderson and Shankar Krishnan left their respective jobs.

In early June 2000, Cheryl Carner of Fleet Retail Finance received a telephone call from a business contact who informed her that Phar-Mor was again looking for financing. Carner looked up Phar-Mor on Fleet's computer database and found Mirza's name listed as the outside contact person. Carner then called Phar-Mor and asked to speak to the CFO. Phar-Mor's receptionist directed Carner's call to the voicemail of the new CFO, Martin Seekely.

Prior to hearing back from Seekely, Carner called Mirza and told him she was unable to communicate with Seekely. Mirza promised to call Shankar Krishnan on Fleet's behalf. Mirza called Krishnan and encouraged him to tell Seekely to return Carner's call. According to Krishnan, he told Mirza to call Seekely directly. According to Mirza, Krishnan stated that Krishnan personally would call Seekely.

Seekely returned Carner's call approximately two days later and the two scheduled a meeting. Seekely does not recall being urged to return the call by Mirza or Krishnan. Mirza admits that by the time he talked to Seekely, Seekely and Carner had already established the meeting.

Prior to the meeting between Fleet and Phar-Mor, Mirza sent Fleet a letter with information about Phar-Mor's borrowing needs. Carner used this information in preparing for the meeting. After the meeting, Phar-Mor and Fleet entered into a series of negotiations. Carner kept in touch with Mirza throughout this time period to inform Mirza of the status of the negotiations.

On July 6, 2000, Mirza sent Fleet a letter in which he stated that he expected a fee of one-half percent of the total line of credit at the closing of any loan between Fleet and Phar-Mor. Prior to this, Mirza had discussed with both Carner and Fleet's president that he expected this amount as compensation for his efforts, and both assured Mirza that he would be paid.

Phar-Mor selected Fleet as its lender in November 2000. However, Fleet never paid Mirza his one-half percent fee. Mirza filed suit alleging that Fleet breached an oral contract to compensate him for his services. Fleet moved for summary judgment, and the district court granted that motion, concluding that no rational jury could find that Mirza was the procuring cause of the transaction between Fleet and Phar-Mor.

## II. DISCUSSION

It is undisputed that Illinois law applies to this diversity case. Under Illinois law, in order to earn a commission for finding a business opportunity for another party, the finder must show that his "services were the procuring cause of that transaction." *See Modern Tackle Co. v. Bradley Indus., Inc.*, 297 N.E.2d 688, 692, 11 Ill. App. 3d 502, 507 (Ill. App. Ct. 1973). The finder fulfills this obligation when he "finds, introduces, and brings together parties to a business opportunity, leaving the ultimate negotiation and consummation of the business transaction to the principals."

*See Ruskin v. Rodgers*, 399 N.E.2d 623, 637, 79 Ill. App. 3d 941, 960 (Ill. App. Ct. 1979).

To avoid summary judgment, Mirza must show that there is a genuine issue of material fact such that Fleet is not entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Mirza must therefore provide evidence that he either found, introduced, or brought together Fleet and Phar-Mor for the purposes of the 2000 transaction. Mirza has not met this burden. It is undisputed that Mirza did not inform Fleet that Phar-Mor was interested in obtaining a loan. That information came from one of Carner's business contacts. It is also undisputed that Mirza was not the first to inform Phar-Mor of Fleet's interest in providing financing. That was accomplished when Carner called Seekely and left him a voicemail. Finally, there is no evidence that Mirza's involvement was the reason that Seekely returned Carner's phone call. Seekely does not recall being instructed to return the call by either Mirza or Krishnan. Krishnan denies that he ever contacted Seekely on this matter. And Mirza acknowledges that by the time he spoke with Seekely, Seekely and Carner had already arranged a meeting. Thus, the parties to the transaction found each other, and there is no evidence that Mirza's involvement caused their introduction.[1]

Mirza argues that he is still entitled to his commission because he was instrumental to the completion of the transaction. In support of this assertion, Mirza cites many

---

[1] Correctly, neither party argues that Mirza's introduction of Barbara Anderson and Shankar Krishnan in 1998 is relevant to whether Mirza found or introduced Phar-Mor to Fleet for the purposes of the 2000 transaction. *Cf. Modern Tackle*, 297 N.E.2d at 694 (holding that a finder is not eligible for a commission where more than a year elapsed between when he initially introduced the parties and one party rejected the possibility of a deal and when another finder reintroduced the parties).

Illinois cases holding that a broker need not initially introduce the parties to the transaction or to each other. *See, e.g.*, *Schaller v. Weier*, 744 N.E.2d 376, 380, 319 Ill. App. 3d 172, 178 (Ill. App. Ct. 2001) (holding that "it is not enough that the broker was the first to bring the property to the attention of the buyer. The broker must also show that the sale was the proximate result of his or her efforts") (citation omitted); *Bear Kaufman Realty, Inc. v. Spec Dev., Inc.*, 645 N.E.2d 244, 247, 268 Ill. App. 3d 898, 901 (Ill. App. Ct. 1994) (holding that "a broker may be deemed the procuring cause because of the negotiations he conducts in arranging the transaction, although he had not initially introduced the parties to the transaction or personally introduced them to one another").

While it is true that a broker need not introduce the parties, Mirza has never claimed to be a loan broker. Loan brokers and loan finders are similar, with the major distinction being that loan brokers participate in negotiating the agreement between the parties. *See Modern Tackle Co. v. Bradley Indus., Inc.*, 297 N.E.2d 688, 692, 11 Ill. App. 3d 502, 507 (Ill. App. Ct. 1973). Thus, a loan broker may be a procuring cause for a transaction and earn his commission by conducting the negotiations on behalf of one of the parties. But a loan finder's job is defined by his ability to find and introduce the parties to the transaction and each other.[2] Therefore, for Mirza to perform under the oral contract engaging his services as a loan finder, it was imperative for him to introduce Phar-Mor to Fleet.

We pause to note that even if Mirza had been engaged as a loan broker, he still could not show that he was instrumental to the completion of the loan agreement between Phar-

---

[2] This definition is confirmed in Mirza's own brief, in which he states that a "finder is an intermediary who contracts to introduce parties to a business opportunity . . . ."

Mor and Fleet. Mirza did not participate in negotiations between the parties. Furthermore, he did not have any substantive contact with the parties during the last five months of negotiations when several different lenders were competing for Phar-Mor's business. Although there is evidence that Mirza communicated with the parties several times and initially provided Fleet with information about Phar-Mor's borrowing needs, a broker must "show that the sale was the proximate result of his or her efforts." *See Schaller v. Weier*, 744 N.E.2d 376, 380, 319 Ill. App. 3d 172, 178 (Ill. App. Ct. 2001). Mirza's limited involvement in the transaction does not meet this burden.

### III. CONCLUSION

Because Mirza cannot show that he was the procuring cause of the transaction between Fleet Retail Finance and Phar-Mor, Inc., the district court's grant of summary judgment in favor of Fleet is AFFIRMED.

A true Copy:

       Teste:

                                    _____

                                      *Clerk of the United States Court of*
                                          *Appeals for the Seventh Circuit*