*In re* PETITION TO CREATE EMMETT-CHALMERS FIRE PROTECTION DISTRICT.—(JOHN CALHOUN MITCHEL *et al.*, Petitioners-Appellants, *v.* EMMETT-CHALMERS FIRE PROTECTION DISTRICT, Respondent-Appellee.—(FREDERICK E. FOSS *et al.*, Intervenors.))

Third District   No. 77-33

Opinion filed April 10, 1978.

Andrews and Frew, of Rockford, for appellants.

Lucie, Heiser & Slater, of Bushnell, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
This is an appeal from an order of the Circuit Court of McDonough County allowing disconnection as to some parties and denying disconnection as to other parties, of properties within a fire protection district.

The actions were brought pursuant to section 15 of "An Act in relation to fire protection districts" (Ill. Rev. Stat. 1975, ch. 127½, par. 35). The parties sought disconnection of certain properties from the Emmett-Chalmers Fire Protection District (hereinafter referred to as "E-CFPD"). Consolidated hearings were held on the 135 petitions for disconnection. The trial court allowed disconnection as to some properties and denied as to other properties, as we have indicated.

Approximately 50 petitioners have appealed from the order of the Circuit Court. On appeal, the petitioners argue (1) that the findings of the circuit court are against the manifest weight of the evidence, (2) that the circuit court erred in not entering findings of fact as to each individual property, (3) that the trustees of the Emmett-Chalmers Fire Protection District lacked standing to respond in the action on behalf of the district, and that, as a consequence, the district could not object to the disconnection, (4) that the election to create the district is void, and, consequently, the district should be declared a nonentity and the action for creation of the district should be dismissed, and (5) that section 11b of "An Act in relation to fire protection districts" (Ill. Rev. Stat. 1975, ch. 127½, par. 31b) is unconstitutional as applied to petitioners.

The record discloses that in late 1975 petitions were filed in the Circuit Court of McDonough County for the creation of the Emmett-Chalmers Fire Protection District, and that following the election on the issue of creation of a fire protection district, the trial court entered an order establishing the E-CFPD. From January of 1976 through April 1976, some 135 petitions for disconnection of property from the E-CFPD were filed in the circuit court pursuant to section 15 of "An act in relation to fire

protection districts" (Ill. Rev. Stat. 1975, ch. 127½, par. 35). By agreement of counsel for the parties, hearings on the petitions were consolidated and held on June 23 and 24, 1976.

At the consolidated hearing, testimony was presented from the trustees of the E-CFPD, who were, at that time, in the process of initially organizing and budgeting for the ongoing operation of the fire protection district. The testimony of the trustees established that the E-CFPD would be a volunteer fire department, and that, at that time, the trustees knew of 40 individuals interested in joining the eventual 25-person volunteer fire company. Arrangements were being made for the training of volunteers in the University of Illinois Firemanship Training Program. The trustees had planned for the procurement of pumper trucks, with a total capacity of 4,750 gallons, together with equipment to take the water out of streams and ponds; also to buy hoses, nozzles, uniforms for the volunteers, a siren, communications systems, ladders and additional equipment. Provision had been made for construction of a fire station on land leased for that purpose at a rent of $10 per year. The projected operating expense for the E-CFPD was $10,819.32 per year. Testimony from the trustees indicated that taxes levied by the district at the rate of $1.25 per $1,000 assessed valuation (the maximum permissible assessment rate which would avoid the possibility of a requirement of a voter referendum), would produce approximately $10,500 per year in tax revenues.

Some of the petitioners seeking disconnection from the E-CFPD were currently obtaining, or desired to obtain fire protection from the Macomb Fire Department, the Colchester Fire Department or the Industry Fire Department. Testimony at the hearing indicated that the Macomb Fire Department is a nonvolunteer fire department with 22 paid fire fighters, and that the department provides fire protection to property outside of Macomb on a contract basis. The Macomb Fire Department apparently had three trucks used in connection with rural fires with a total capacity of 3,250 gallons of water. Additional testimony established that the Colchester Fire Department is a volunteer fire department with 26 volunteer firefighters, and this department responded to rural fires, charging a set fee for each rural call. Testimony was also heard from various petitioners, indicating the position of their particular properties with respect to the City of Macomb and the proposed site of the E-CFPD fire station, and reflected the petitioners' desires with respect to fire protection services.

Following the hearing of evidence in this cause, the circuit court on October 6, 1976, entered an order granting disconnection to certain properties and denying disconnection to other properties involved in the petitions. Motions for post-judgment relief were filed by various petitioners and on December 30, 1976, the circuit court entered an order

allowing post-judgment relief to some petitioners and denying such relief to other petitioners, and, also, noting the reasons in a memorandum opinion. On January 3, 1977, the trial court entered its formal order allowing disconnection to certain petitioners, and denying disconnection to other petitioners. Fifty of the petitioners whose requests were denied have appealed, as we have indicated.

It is first contended, on appeal, that the order of the Circuit Court of McDonough County denying disconnection of petitioners' property is against the manifest weight of the evidence. On this issue, we note the well-settled principle, as stated in *Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 181, 354 N.E.2d 899:

> "* * * that a trial court, sitting without a jury, is to weigh conflicting testimony and that its findings will not be disturbed unless they were contrary to the manifest weight of the evidence."

As also stated in *General Grocer Co. v. Bachar* (3d Dist. 1977), 51 Ill. App. 3d 907, 911, 365 N.E.2d 1106:

> "A reviewing court may not reverse the judgment of a trial court merely because different conclusions could be drawn. An opposite conclusion must be clearly evidenced from all the evidence before the trial court's judgment can be reversed."

The petitioners in the instant case were seeking to disconnect their properties from the E-CFPD pursuant to section 15 of "An Act in relation to fire protection districts" (Ill. Rev. Stat. 1975, ch. 127½, par. 35), which provides in part:

> "Whenever any property within a fire protection district, organized under the provisions of this Act, does not have the territorial qualifications described in Section 1 of this Act [Ill. Rev. Stat. 1975, ch. 127½, par. 21], or is not reasonably protected by the district from the hazards of fire or would receiver greater benefit of service from another such district or other municipal corporation, * * * the owner or owners of such property may detach and disconnect such property from such fire protection district at any time before such district has incurred any bonded indebtedness * * *."

■■ We have reviewed the record in this cause and conclude that the trial court's determinations were not contrary to the manifest weight of the evidence. We observe that when petitioners in the proceeding in the trial court established by evidence that their property did not have the requisite territorial qualifications for inclusion in the fire protection district, the trial court allowed the disconnection of the property. It appears that the primary basis urged by petitioners for disconnection of their property was that E-CFPD would not reasonably protect their

property from the hazards of fire or that another fire protection district would provide greater protection from the hazards of fire. Where specific proof of the inadequacy of the E-CFPD or of the greater adequacy of another district to provide fire protection was introduced at the trial (as when the principal approach from the E-CFPD station to certain properties was over a bridge which a firetruck could not cross), the trial court allowed disconnection. The majority of petitioners, however, relied upon a general showing that greater service could be obtained from other fire protection organizations, such as the Macomb nonvolunteer fire department. The trial court heard extensive testimony as to the capabilities of alternative fire departments and of the E-CFPD, as it would be constituted following completion of its organization. From our review of the testimony, we cannot say that the trial court's determination that petitioners, who were not disconnected, showed that other districts would provide greater benefit of service. We conclude that the trial court's determination was not contrary to the manifest weight of the evidence.

Petitioners also urge on appeal that the disconnection of their properties would not impair the financial stability of E-CFPD. Section 15 does require that, in addition to the conditions set forth in this opinion heretofore, a party seeking disconnection must prove that:

"* * * the loss of assessed valuation by reason of the disconnection of such territory will not impair the ability of the district to render fully adequate fire protection service to the territory remaining within the district."

With respect to a similar provision (Ill. Rev. Stat. 1975, ch. 127½, par. 38.3), the Illinois Supreme Court stated in *In re Roberts Park Fire Protection District* (1975), 61 Ill. 2d 429, 438, 337 N.E.2d 8:

"In every disconnection by operation of law [under Ill. Rev. Stat. 1975, ch. 127½, par. 38.3] there will be a decrease in tax base valuation resulting in a loss of tax revenue to the district. This loss of revenue, however, has no significance to the disconnection unless it is such as to impair the fire district's ability to render 'fully adequate' fire protection. * * *. The legislature was aware that the financial loss resulting from a disconnection might necessitate a tax increase, and it certainly was not its intent to defeat a disconnection in order to avoid a tax increase."

In the *Roberts Park* case, the burden was on the fire protection district to show that the loss of property from the district would impair the district's ability to provide fully adequate protection and the supreme court held that where the district was not taxing at the maximum permissible rate and where disconnection would result in reduction of 30% to 35% of the district's area, the district had not sustained its burden of proof because

expenses would be reduced due to the disconnection and the district could raise its tax levies.

■■ In the instant case, we note that section 15 specifically places a burden of proof on this issue on petitioners. Testimony at the consolidated hearing established that the E-CFPD planned on levying taxes in the maximum permissible amount (without the possibility of a referendum) and that with those funds, the district would barely be able to finance the minimum equipment necessary to provide for first-line and backup fire equipment. Since petitioners represent approximately 10% of the assessed valuation of the E-CFPD, we agree with the court that, under the circumstances of this case, petitioners did not sustain their burden of proof that the disconnection of their properties would not impair the ability of the E-CFPD to provide fully adequate fire protection to the properties remaining in the E-CFPD.

■■ Petitioners also argue that the trial court erred in not entering findings of fact with respect to each of the individual properties. Section 15 provides that:

> "If the court, upon hearing such petition [for disconnection], finds that the petition complies with the provisions of this Act and that the allegations of the petition are true the court shall enter an order and decree detaching and disconnecting such property from such district * * *." (Ill. Rev. Stat. 1975, ch. 127½, par. 35.)

We note from the trial court's memorandum, that the trial court did consider the proofs adduced with respect to each piece of property specifically, and that the court made its determination based upon those proofs. It is noted that the hearing in the trial court was a consolidated hearing, and that by stipulation of parties, certain evidence at the hearing was to apply to all petitioners. Under such circumstances, we conclude after examining the record that the trial court's memorandum and order sufficiently set forth the court's findings with respect to the properties involved.

■■ Petitioners additionally argue that the trustees of the E-CFPD lacked standing to respond to the petitions to disconnect on behalf of the district because the trustees bonds had not been approved until after the hearing was held, and that therefore the district could not object to the disconnection. We initially note that section 15 states that: "The fire protection district shall be a necessary party to the proceedings [for disconnection] * * *". Therefore, lack of standing on the part of the trustees would not bring the results urged by petitioners. We further note that, as stated in *Harvey v. Sullivan* (1950), 406 Ill. 472, 478, 94 N.E.2d 424:

> "A person is a *de facto* officer, it has been said, where the duties of the office are exercised, '* * * under color of a known and valid appointment or election but where the officer had failed to

conform to some precedent requirement or condition, as to take an oath, give a bond, or the like; * * *.' "

As also stated in *People v. O'Neill* (1965), 33 Ill. 2d 184, 186, 210 N.E.2d 526:

" 'It is well settled that *de facto* officeholders * * * are vested with complete authority to act as such, particularly in the absence of any *de jure* officers. * * *.' "

We believe it is clear that the trustees were, at the time of the hearing, *de facto* officials, and that they were vested with sufficient authority to appear as trustees of the E-CFPD at the disconnection proceedings.

■■ Petitioners also contend that the election to create the E-CFPD is void, and that consequently the entire action for creation of the district should be dismissed. We note that in a *quo warranto* action prosecuted by the McDonough County State's Attorney, the Circuit Court of McDonough County found that the E-CFPD was legally created and that there were no deficiencies in the organizational election. It is clear that such a judgment in a *quo warranto* proceeding is *res judicata* as to the question of validity of existence of the district, and precludes petitioners in this case from questioning the existence of the district. *People ex rel. McAllister v. East* (1951), 409 Ill. 379, 100 N.E.2d 746; *Village of Bridgeview v. City of Hickory Hills* (1st Dist. 1971), 1 Ill. App. 3d 931, 274 N.E.2d 925, *cert. denied* (1972), 407 U.S. 921, 32 L. Ed. 2d 806, 92 S. Ct. 2460.

· Petitioners finally contend that section 11b of "An act in relation to fire protection districts" (Ill. Rev. Stat. 1975, ch. 127½, par. 31b) is unconstitutional as applied to them. Petitioners construe this provision as mandating that after certification of the existence of the E-CFPD, no other fire protection district or organization shall provide fire protection within the territory of E-CFPD. Petitioners argue that this provision denies them the right to purchase additional fire protection (*i.e.*, from the Macomb Fire Department), and that this denial is an unconstitutional deprivation of their rights. We note that it is not specifically clear that the provision in question is subject to the interpretation urged by petitioners, and we also note that in the trial of this cause, the issue was first raised in petitioners' post-trial motion.

Assuming *arguendo*, however, that the statute would prohibit petitioners from purchasing fire protection from a fire protection district · or municipal corporation other than the E-CFPD, we believe that such provision is a constitutional exercise of the police power. As the Illinois Supreme Court stated in *Sherman-Reynolds, Inc. v. Mahin* (1970), 47 Ill. 2d 323, 326, 265 N.E.2d 640:

"* * * the police power [is] the attribute of sovereignty in every government by which it may protect lives, health, morals and

general welfare. [Citations.] While the power is not without limitation and may not be exercised arbitrarily, the legislature has a broad discretion in the enactment of legislation in its exercise."

Our conclusion is that the legislature could properly determine and enact, within the scope of its police power, that fire protection is best provided as a local service and that one fire protection district should not furnish service, normally, as a matter of course within the territory of another fire protection district.

Even if section 11b were construed to prohibit individuals purchasing fire protection from a municipal corporation located outside the district, no constitutional right would be denied. The district cannot be formed unless there is a judicial finding that the territory forming the district is "so situated that the acquisition, establishment, maintenance and operation of a fire station or stations, facilities, vehicles, apparatus and equipment for the prevention and control of fire therein will conduce to the promotion and protection of the health, safety, welfare and convenience of the public." Ill. Rev. Stat. 1975, ch. 127½, par. 21.

■■ We also note that section 11b deals primarily with cities, villages, or incorporated towns coterminus with or included within a fire protection district. So far as the record shows there are no such municipalities within the E-CFPD. On the principle that a statute should not be declared unconstitutional unless there is no alternative reasonable construction which could uphold constitutionality, we find that reasonable construction does in fact support constitutionality of the Act. *Cf. People ex rel. Kelly v. Lund* (1962), 25 Ill. 2d 387, 185 N.E.2d 174.

For the reasons stated, therefore, the judgment of the Circuit Court of McDonough County is affirmed.

Affirmed.

STENGEL and STOUDER, JJ., concur.