HENRY G. SCHULTZ *et al.*, Petitioners-Appellees, *v.* ATWOOD FIRE PROTECTION DISTRICT, Respondent-Appellant.

Fourth District   No. 4—83—0103

Opinion filed September 1, 1983.

Lee & Lee, Ltd., of Tuscola, for appellant.

Lemna, Moore & Carroll, of Tuscola, for appellees.

JUSTICE GREEN delivered the opinion of the court:

Respondent, Atwood Fire Protection District, appeals a judgment of the circuit court of Douglas County entered January 24, 1983. The judgment permitted detachment from the district of a tract of approximately 97 acres of farmland without buildings which was owned by petitioners. Respondent asserts that the trial court's decision was contrary to the manifest weight of the evidence. We agree and reverse.

The proceeding was brought pursuant to section 15 of "An Act in relation to fire protection districts" (Ill. Rev. Stat. 1981, ch. 127½, par. 35). The section provides that upon a proper petition, notice, and hearing, a circuit court "shall" order a tract detached from a district if the court finds, as pertinent here: (1) The tract "is not reasonably protected by the district from the hazards of fire"; or (2) the district "would receive greater benefit of service from another such district or another municipal corporation," and (3) the detachment will not cause remaining territory to be noncontiguous; and (4) "the loss of *** territory will not impair the ability of the district to render fully adequate" service to the territory remaining in the district.

The parties agree that (1) no showing was made that the property was not reasonably protected by the district, and (2) a sufficient showing was made that detachment would neither make the remaining territory noncontiguous nor impair the ability of the district to properly serve the remaining territory. Thus, the issue remaining concerns whether petitioners would receive even better service upon detachment. They proposed to obtain that service by an agreement with another municipal corporation, the city of Tuscola. The question for our determination is whether the trial court's determination that better service would, in fact, be received from that city is contrary to the manifest weight of the evidence.

The evidence was undisputed that both that city and the respondent district furnished good service. They both operated volunteer groups with an electric "beeper" system of notifying their available volunteers. The Tuscola fire department received calls for help through the Douglas County sheriff's office in Tuscola which was manned around the clock. Personnel of that office then called the firemen. Respondent had one paid employee on duty at all times at its station in Atwood. The practice was that the person on duty, upon receipt of a report of a fire, would summon available volunteers and then immediately drive toward the site of the fire with one vehicle which would contain much of the individual members' equipment.

Other vehicles would then be brought by other volunteers who were assigned to go immediately to the station to do so. Most of the volunteers were assigned to go directly from the place where they received the call to the site of the fire. Each firefighting unit had arrangements with other such units for mutual aid when needed.

The evidence tending to support petitioners' contention that better service could be obtained from the Tuscola fire department was: (1) The Tuscola fire station was two to three miles closer to petitioners' tract than was the station of respondent in Atwood; (2) persons most likely to spot a fire on the tract would be persons in the petitioners' son's house located on a small parcel next to the tract; (3) the telephone in the son's house was such that the Tuscola fire department could be reached by dialing only five digits while it was necessary to dial seven digits to reach respondent's station.

The evidence supporting petitioners' position was countered by evidence that respondent's equipment was geared more to fighting a fire in a field than was that of the Tuscola fire department. The source of water closest to petitioners' property was a farm pond one-half mile from the property. Except for one vehicle, all of Tuscola's equipment was made to attach to a hydrant. That single vehicle had a capacity of 1,000 gallons and equipment enabling it to draft water from wells, cisterns, lakes and streams. In fighting a fire on the tract, the Tuscola department would be limited by the amount of water brought in the one tanker supplemented by water that could be obtained if the tanker was taken to the nearby pond and refilled or such water as could be pumped through hoses from the pond, a distance of about one-half mile, to the tract.

In comparison, respondent was shown to have four vehicles capable of storing and carrying water with a total capacity of 3,850 gallons, nearly four times the capacity of the Tuscola department. Two pieces of respondent's equipment were designed for fighting field fires. They had extended front bumpers upon which firemen could stand and play a hose on fires on the ground as the vehicle moved about.

We do not consider the lesser number of digits necessary to dial in phoning the Tuscola department rather than respondent to be of substantial significance. The lesser number of miles equipment would have to travel to reach petitioners' property was of more significance. A saving of four or five minutes in arrival time could well result from use of the Tuscola department. However, this saving of time cannot reasonably be held to exceed in value the advantage in fighting field fires with equipment (1) having the capacity to carry three or four

times the amount of water carried by the lone Tuscola vehicle, and (2) having extended bumpers from which firefighters can stand, spraying water, on a vehicle which is moving through a field.

We hold that the trial court's finding, that petitioners would receive greater benefit of service if permitted to detach, was contrary to the manifest weight of the evidence.

Respondent argued that the arrangement between petitioners and the city of Tuscola was not shown with sufficient definitiveness to be considered. Longtime Tuscola Fire Chief, Dennis Dietrich, had testified that a Tuscola ordinance authorized his department to answer a rural fire for a $500 fee. The evidence was at least as strong as that held to show an arrangement for service if detachment was permitted in the case of *In re Carol Stream Fire Protection District* (1979), 76 Ill. App. 3d 795, 395 N.E.2d 395. However, more formal proof would have been better.

Respondent has argued that if detachment is permitted to stand here, other petitions by landowners closer to Tuscola than to Atwood would also have to be allowed. Respondent contends that *in toto* the detachments could "impair the ability of the district to render fully adequate" service to the area remaining in the district. This court has faced a similar argument in connection with school district detachment. (*Board of Education v. Scott* (1969), 105 Ill. App. 2d 192, 244 N.E.2d 821.) This court held that such a threat was too speculative to be considered. In *Kaupas v. Regional Board of School Trustees* (1977), 47 Ill. App. 3d 222, 361 N.E.2d 1157, we expanded upon the rule to say that if a succession of petitions should be filed, consideration could then be given to the effect allowance of one petition would have on other requests.

Respondent points out that, here, the problem is more crucial upon the initial petition than in the cited school cases because, here, the detachment was allowed almost solely upon the matter of distances, an element which would likely be common to subsequent petitions, while in those cases, there were characteristics that would be unique to the original petition. Because we reverse, we need not rule upon respondent's contention. The problem presented does indicate the desirability of a public policy towards maintaining the stability of governmental district boundaries.

Our decision reversing the judgment is for the reasons stated.

Reversed.

MILLS and MILLER, JJ., concur.