February 17, 1999

No. 3--98--0369

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 1999

 

In re
 GILMAN COMMUNITY FIRE ) Appeal from the Circuit Court

PROTECTION DISTRICT AND ) of the 21st Judicial Circuit,

DANFORTH TOWNSHIP FIRE ) Iroquois County, Illinois

PROTECTION DISTRICT )

)

)

(Gilman Community Fire )

Protection District and ) No. 97--MR--16

Anita Honn, )

  Plaintiffs-Appellants, )

)

v. )

)

Danforth Township Fire )

Protection District and )

Ralph Koester, ) Honorable David A. Youck,

  Defendants-Appellees). ) Judge Presiding

_________________________________________________________________

JUSTICE KOEHLER delivered the opinion of the court:

_________________________________________________________________

The plaintiff, Gilman Community Fire Protection District (Gilman), in this territory disconnection case appeals the Iroquois
 
County circuit court's order dismissing its petition to detach property from the defendant, Danforth Township Fire Protection District (Danforth), and annex that property to the Gilman Community Fire Protection District.  We must decide whether the circuit court’s conclusion was against the manifest weight of the evidence.  In so doing, we must answer the following question:  Did Gilman meet its burden as set forth in the Fire Protection District Act (70 ILCS 705/16 (West 1992))?  

FACTS

The plaintiff, Gilman Community Fire Protection District, organized a petition to disconnect approximately 2,200 acres of farm land and 15 rural residences from the defendant, Danforth Township Fire Protection District, and annex it to the Gilman district. 

The petition was filed under section 16, which states:

"Territory included within the limits of any fire protection district may be disconnected from the district and added to another district to which the territory is contiguous, in the manner hereinafter set forth; (1) if the territory would receive equal or greater benefits from the district to which it seeks to be transferred; (2) if the transfer will not cause the territory remaining in the district from which the transfer is to be made, to be noncontiguous; (3) if the transfer will not cause a serious injury to the district from which the transfer is to be made; and, (4) if the trustees of the district to which the transfer is sought to be made do not file a written refusal to accept the territory within the time hereinafter provided."  70 ILCS 705/16 (West 1992). 

The circuit court held a hearing in accordance with section 16 at which the parties stipulated that: (1) the transfer of the property would not cause the remaining territory to be noncontiguous; and (2) the trustees of the annexing district have filed a consent to the transfer with the court.  The parties also agreed that the fire protection services provided by Gilman and Danforth are equal.  The parties disagreed, however, as to the comparison of ambulance services.  

Gilman's testimony revealed: (1) St. Mary’s Hospital personnel staff its ambulance service for eight hours a day; (2) volunteers staff the remaining 16 hours; and (3) the staffers are emergency medical technician (EMT)-intermediate personnel with approximately 156 hours of training and are permitted to carry five different drugs.  Danforth's testimony revealed: (1) Riverside Medical Center staffs its ambulance on a 24-hour basis; (2) staffers are paramedics with over 1,200 hours of training and provide "Advanced Life Support," the highest and best-trained emergency services available; and (3) their ambulance is permitted to carry every drug available in an emergency room.

Following the hearing, the court: (1) dismissed Gilman's petition as the result of its failure to meet the conditions for making the transfer required by section 16; and, in so doing, (2)  denied Gilman's request to certify the issue to the appropriate election authorities for referendum.  Gilman now appeals.

ANALYSIS

A trial court's findings, after weighing conflicting testimony, will not be disturbed unless they are contrary to the manifest weight of the evidence.  
In re
 Petition to Create Emmett-

Chalmers Fire Protection District
, 58 Ill. App. 3d 897, 901, 374 N.E.2d 1126, 1128 (1978).  A reviewing court cannot reverse a lower court’s decision merely because different conclusions can be drawn.  Rather, an opposite conclusion must be clearly evident.  
Emmett-

Chalmers
, 58 Ill. App. 3d at 901, 374 N.E.2d at 1128.  The burden of establishing equal or better service is, therefore, placed upon the plaintiff.  
Emmett-Chalmers
, 58 Ill. App. 3d at 903, 374 N.E.2d at 1130.

We must now consider whether the requirements of section 16 have been satisfied.  Since the parties previously stipulated to the second and fourth requirements of section 16, we need only address the following questions.  70 ILCS 705/16 (West 1992).  

Did Gilman meet its burden to establish that the Danforth territory proposed to be disconnected and added to Gilman would receive equal or greater ambulance service from Gilman?  The Danforth ambulance was staffed around the clock by hospital personnel, as compared to the eight hours a day that Gilman was staffed by hospital personnel.  Danforth ambulance paramedics have 1,200 hours of training and can administer a greater range of drugs in comparison to the 156 hours of training for Gilman EMT personnel, who can administer only five drugs.  Although some of the subject property is located closer to the Gilman ambulance station than to the Danforth station, Danforth's response time would be better during the 16 hours that Gilman is staffed with volunteers.  Accordingly, we conclude that Gilman did not meet its statutory burden to establish that it provides equal or better service than Danforth.   

Did Gilman meet its burden to establish that the property transfer would not cause serious injury to Danforth?  The proposed disconnection would remove property assessed at $1,295,580 from Danforth, a loss amounting to 9% of its total assessed valuation.  Although Danforth's fire station needed a new floor and a new roof, Danforth deferred the maintenance when it purchased a new fire truck.  Consequently, Danforth's cash cushion was $2,350, with little opportunity for growth in the tax levy.  Accordingly, we conclude that a loss of 9% of its total assessed valuation would seriously impair Danforth's necessary operations and result in serious injury.  
Emmett-Chalmers
, 58 Ill. App. 3d at 903, 374 N.E.2d at 1130.

In conclusion, Gilman contends that the circuit court considered facts not in evidence when it: (1) referenced the effect of possible future disconnection on Danforth petitions; and (2) commented on the healthy financial status of Gilman.  In addressing this issue, we recognize that a presumption exists that the court considered only admissible evidence and disregarded inadmissible evidence in reaching its conclusion.  
McDonald's Corp. v. Butler Co.
, 158 Ill. App. 3d 902, 912, 511 N.E.2d 912, 919 (1987).  However, a circuit court's statements within the record that it considered matters not in evidence necessarily rebuts the presumption.  
McDonald's Corp.
, 158 Ill. App. 3d at 912, 511 N.E.2d at 919.  In this case, the circuit court made reference to future petitions to disconnect Danforth property but added: "I just point that out as an aside because it's having no bearing whatsoever on my decision."  Thus, when viewed in context, we conclude that the circuit court based its decision only on the testimony properly presented at trial and, therefore, its decision was not against the manifest weight of the evidence.

CONCLUSION

In sum, we conclude that the circuit court's dismissal of Gilman's petition was proper because Gilman did not sustain its burden to meet the conditions of a disconnection as required by section 16 (70 ILCS 705/16 (West 1992)).  Accordingly, the circuit court's decision was not against the manifest weight of the evidence because: (1) Danforth would not receive equal or greater benefits from Gilman because the ambulance service provided by Danforth was superior in personnel, on-call hours, and medical capacity; (2) the transfer of Danforth territory to Gilman would cause Danforth serious injury because it would result in the loss of $1,295,000 (9%) of Danforth's assessed valuation; and (3) the court considered only proper evidence.

Affirmed.

BRESLIN and HOMER, JJ., concur.