*In re* PETITION TO DISCONNECT CERTAIN TERRITORY FROM THE RUTLAND AND DUNDEE TOWNSHIPS FIRE PROTECTION DISTRICT (Oakbrook Bank, as Trustee, *et al.*, Petitioners-Appellees, v. Rutland and Dundee Townships Fire Protection District, Respondent-Appellant (Village of Carpentersville, Intervenor-Appellee)).

Second District   No. 2—98—0672

Opinion filed July 22, 1999.

Ronald O. Roeser, of Roeser & Vucha, of Elgin, for appellant.

Bernard Z. Paul and Kathryn K. Buzzard, both of De Kalb, for appellee Village of Carpentersville.

Kenneth C. Shepro, of Altheimer & Gray, of Chicago, for appellees James R. Kruger, Jr., Karen A. Kruger, and Oakbrook Bank.

JUSTICE HUTCHINSON delivered the opinion of the court: ˙
Respondent, the Rutland and Dundee Townships Fire Protection District (the Rutland FPD), appeals following the denial of its post-trial motion, contending that the order of the trial court was against the manifest weight of the evidence. The trial court's order transferred a certain portion of respondent's fire protection district to another district. We affirm.

In the present case, petitioners, Oak Brook Bank, acting as trustee of a parcel of real estate located in Kane County (the Bank), James R. Kruger, Jr., and Karen A. Kruger, voters, brought an action to detach certain property from the Rutland FPD and to have the subject property annexed by the Village of Carpentersville Fire Protection District (the Carpentersville FPD). Petitioners relied on the disconnection provisions of section 15 of the Fire Protection District Act (the Act) (70 ILCS 705/15 (West 1996)).

Respondent objected and filed motions to dismiss and strike, pursuant to sections 2—615 and 2—619(a)(2) of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619(a)(2) (West 1996)). Respondent argued that petitioners failed to allege that the parcel was not reasonably protected by the Rutland FPD and failed to allege facts in support of disconnection. Respondent also argued that petitioners lacked standing in that they did not own the majority of the property sought to be disconnected. On January 22, 1998, the trial court denied both of respondent's motions.

On January 29, 1998, the Village of Carpentersville (the Village) filed a petition for leave to intervene in the proceedings and a petition for disconnection. The petition for leave to intervene stated that the Village had a direct interest in the proceedings in that it was a property owner within the property sought to be disconnected. Moreover, if the trial court granted the bank's and the Krugers' petition, the Village would be the entity obligated to provide fire protection service to the property at issue. At a hearing conducted on February 3, 1998, the

trial court granted the Village leave to intervene and allowed its petition for disconnection to stand.

Respondent filed its answers to both petitions for disconnection, and the cause proceeded to a bench trial. Petitioner James Kruger testified that he is a registered voter and resides in the Glen Eagle Farm subdivision, which is located in the Village. Kruger occupies the rank of sergeant in the Village's police department. His property, along with other property in that subdivision, is included as part of the property sought to be disconnected from the Rutland FPD.

Todd Drafall, Kane County deputy county clerk and county tax extender, brought certified copies of the valuation of the Rutland FPD, the certificate of valuation of the tax codes, and a listing of the tax codes that are in the Rutland FPD that are also within the limits of the Village, all based on the 1996 equalized assessed value. He testified that the 1996 equalized assessed valuation of the Rutland FPD was $145,844,769. The 1996 equalized assessed valuation of the property sought to be disconnected was $4,478,026, or approximately 3.1% of the total equalized assessed valuation of the Rutland FPD for that year. Drafall calculated the valuation of the subject territory by identifying those parcels coded to be taxed by both the Rutland FPD and the Village and then totaling their assessed valuation. On cross-examination, Drafall testified that $3,655,284 of that $4,478,026 was attributable to the Glen Eagle subdivision and other new construction already within the Village. He estimated that the Rutland FPD would stand to lose approximately $30,000 to $40,000 in revenue as a result of the disconnection.

Sue Jackson, the director of Quadcom, testified next. Quadcom is the dispatch center for communities including the Rutland FPD and the Carpentersville FPD. Response logs are kept showing the time a call is received, the time the call is dispatched, and the time vehicles arrive on the scene. Jackson provided the logs documenting the calls to which the Rutland FPD responded in the Glen Eagle subdivision between January 1997 and February 1998. Jackson also testified regarding the same type of response logs kept for the Carpentersville FPD.

Scott Adams lives in the Glen Eagle subdivision, is a police officer employed by the Village, and supports the petition for disconnection. He believes that, based on his experience, the Carpentersville FPD would have a faster response time to the area seeking disconnection than would the Rutland FPD. Diane Wilson, the map supervisor at the office of the supervisor of assessments, testified regarding computerized mapping and assigning parcel numbers to new or divided property.

Roland Anderson, the Rutland FPD fire chief, testified regarding the staff of the Rutland fire department. The Rutland FPD maintains three full-time, salaried firefighters. It has two fire stations, one located in Gilberts and one in Sleepy Hollow. All of the firefighting engines, equipment, and trucks are kept at one of the two fire stations. The Rutland FPD includes three municipalities it serves and protects: Gilberts, Sleepy Hollow, and a portion of the Village. Anderson testified that Gilberts and Sleepy Hollow do not have their own fire department but that the Village does. The Rutland FPD encompasses approximately 37 square miles. It owns and stores the following equipment at Gilberts: one 1998 rescue fire engine that carries 750 gallons of water and has a 1,500-gallon-per-minute two-stage pump; one 1989 tanker engine combination that carries 3,000 gallons of water and has a 1,250-gallon-per-minute pump; one 1997 grass fire vehicle that carries a 250-gallon water tank and a pump; one 1987 squad truck that carries a cascade breathing apparatus; and an advanced life support ambulance acquired in 1996. The Rutland FPD owns and stores the following equipment at Sleepy Hollow: one 1994 pumper that carries 1,000 gallons of water and a 1,500-gallon-per-minute pump; one 1983 pumper that carries 1,000 gallons and has a 1,250-gallon-per-minute two-stage pump; and a 1987 ambulance.

Anderson testified regarding the personnel at the Rutland FPD. Along with the three full-time, salaried firefighters, the Rutland FPD employs 34 other personnel working in such capacities as firefighters, paramedics, and emergency technicians. He also stated that the distance between the Gilberts station and the property at issue was 2.6 miles; from the Sleepy Hollow station to the property was 3.1 miles.

With respect to the Rutland FPD's budget, Anderson identified approximately $527,947 in cash receipts for the fiscal year 1997 and $443,624 in cash disbursements for the same period. Anderson testified as to the exhibits showing cash receipts, cash disbursements, and cash balances. He estimated that it costs the Rutland FPD approximately $60,000 per year to staff the area that it serves. Anderson also discussed the condition and projected replacement of the equipment. He did not believe any cutbacks or changes would be required if the subject property were disconnected. It would not have an impact upon the Rutland FPD's equipment as presently intended. However, he did add that if the Rutland FPD lost revenue, it would not have the funds to pay the salaries of additional full-time personnel.

John Schultz, chief of the Village's fire department, testified next. Schultz stated that the Village employs 47 people, including 17 full-time firefighters and 29 paid on-call firefighters. Of the 17 full-time

firefighters, 14 are certified paramedics. Of the 29 paid on-call firefighters, 11 are paramedics and the balance are emergency technicians. The Village maintains three fire stations, all located within the Village.

Schultz listed the equipment at station No. 1: one 1989 advanced life support ambulance; one 1995 advanced life support ambulance; one 1994 fire engine that carries a 1,000-gallon tank and a 1,500-gallon-per-minute pump; one 1967 reserve engine; one 1981 Suburban fire prevention vehicle; and two rescue boats with motors. Station No. 2 maintains one ladder truck; one 1994 advanced life support ambulance; one 1994 advanced life support ambulance; one 1993 fire engine with a 750-gallon tank; one 1980 fire engine with a 500-gallon tank; one 1992 fire prevention vehicle; and one 1997 incident command vehicle. One fire engine with a 500-gallon tank is located at station No. 6.

Schultz testified that the distance from station No. 6 to the subject property is approximately 1.7 miles. The distance from station No. 1 is approximately 2.5 miles. Schultz estimated the travel time at under three minutes from station No. 6 to the Glen Eagle subdivision.

Schultz stated that, compared to the Rutland FPD, the Carpentersville FPD has one ladder truck, a third ambulance, and an extra fire engine. In terms of personnel, Schultz stated that the Carpentersville FPD provides 24-hour coverage at each station, seven days per week.

On cross-examination, Schultz testified that the Carpentersville FPD covers approximately 12 square miles. He admitted that the engine housed at station No. 6 was owned by the Algonquin/Lake in the Hills Fire Protection District.

On behalf of respondent, Anderson testified that the distance from the Gilberts station to the subject property sought to be disconnected is 2.6 miles. He stated that the Rutland FPD would sustain a loss of approximately $49,000 as a result of the disconnection, which would have an adverse impact upon the budget. Anderson believes that the Rutland FPD could provide better service than the Carpentersville FPD because its equipment is similar to that of the Carpentersville FPD. The Rutland FPD would respond to a call from the subject property by sending three fire engines, a ladder truck, an ambulance, and a squad truck.

After closing arguments, the trial court took the case under advisement. In its written order, the trial court made the following findings: the subject property was within the Rutland FPD and within the corporate limits of the Village; the Krugers were legal voters; the Krugers and the Bank were owners of property within the fire protec-

tion district; the Rutland FPD had incurred no bond indebtedness; a disconnection of the subject property would not cause the remaining property within the Rutland FPD to be noncontiguous; the subject property shares greater common interests with the Carpentersville FPD than with the Rutland FPD; the loss of assessed valuation and resulting income to the Rutland FPD represents the amount dedicated by the Rutland FPD to provide services for the subject property; the Rutland FPD would not be impaired in its ability to render fully adequate fire protection services to the remaining territory after the disconnection; the petition to disconnect complied with the pertinent statute; and the allegations of the petition were true. The trial court denied respondent's motions to strike and dismiss and granted petitioners' motion for disconnection. The Rutland FPD timely appeals, contending the trial court erred when it (1) denied its motions to strike and dismiss the petition; (2) held that the parcel would receive a greater benefit of service from the Carpentersville FPD; and (3) held that disconnection would not impair the remaining district.

■ Before reaching the merits of this appeal, we must address petitioners' use of footnotes in its brief. Rule 341(a) states "[f]ootnotes, if any, shall be used sparingly." 177 Ill. 2d R. 341(a). Additionally, the use of footnotes is "discouraged." See 155 Ill. 2d R. 344(b). We have reviewed petitioners' brief and determine that most of the footnotes contain argument which should have been presented in the body of the brief. This cannot be characterized as using footnotes "sparingly." We admonish petitioners to be more cognizant of this rule in the future.

On appeal, respondent first contends that the trial court erred when it denied its motion to strike the petition. Respondent argues that the petition failed to allege that the subject property was not reasonably protected by the Rutland FPD and failed to allege facts in support of disconnection, as required by statute. See 70 ILCS 705/15 (West 1996).

■ Respondent brought this motion pursuant to section 2—615 (see 735 ILCS 5/2—615 (West 1996)); therefore, the question before this court is whether the petition sets forth a cause of action upon which relief could be granted. *Brackett v. Galesburg Clinic Ass'n*, 293 Ill. App. 3d 867, 870 (1997). A cause of action will not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved that would entitle petitioner to recover. See *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997). Because the question is one of law, our review is *de novo. Vernon*, 179 Ill. 2d at 344.

■ Section 15 of the Fire Protection District Act (the Act) (70 ILCS 705/15 (West 1996)) states in relevant part:

"The owner or owners of such property within such fire protection district or any legal voter within such district may file his [or hers or its] petition in the court in which such district was organized setting forth therein the description of the property sought to be detached and disconnected, a statement that the detachment and disconnection will not cause the territory remaining in the district to be noncontiguous; and that the loss of assessed valuation by reason of the disconnection of such territory will not impair the ability of the district to render fully adequate fire protection service to the territory remaining with the district; and alleging facts in support of such detachment and disconnection, and praying that such property be detached and disconnected from such fire protection district. The petition shall be signed and sworn to by the petitioner or petitioners." 70 ILCS 705/15 (West 1996).

■ In the present case, neither party disputes that petitioners own property within the Rutland FPD. Petitioners provided legal descriptions of the property sought to be disconnected. The petition included a statement reflecting that the detachment and disconnection of the property would not cause the remaining territory in the Rutland FPD to be noncontiguous. Petitioners also alleged that the loss of assessed valuation would not impair the ability of the Rutland FPD to render fully adequate fire protection service to the property remaining with the Rutland FPD. In support of their petition for disconnection, petitioners alleged facts regarding the total assessed valuation of the property within the Rutland FPD and the parcel at issue, the Village's willingness to provide services to the property sought to be disconnected, and a statement alleging that the Carpentersville FPD could provide better service than the Rutland FPD because of, *inter alia*, faster response time and proximity of the fire station. Finally, petitioners requested that such property be detached and disconnected from the Rutland FPD. The petition was signed by a trustee of the Bank and sworn to before a notary public. Taking all well-pleaded facts in the petition as true (*Mount Zion State Bank & Trust v. Consolidated Communications, Inc.,* 169 Ill. 2d 110, 115 (1995)) and drawing reasonable inferences from those facts that are favorable to petitioners, we conclude that petitioners have properly pleaded a cause of action for disconnection and have alleged sufficient facts in support thereof in accordance with the requirements of the statute. The trial court properly denied respondent's section 2—615 motion to dismiss.

■ With respect to respondent's section 2—619(a)(2) motion to dismiss (see 735 ILCS 5/2—619(a)(2) (West 1996)), our standard of review is *de novo. Kubian v. Alexian Brothers Medical Center,* 272 Ill. App. 3d 246, 250 (1995). Respondent alleges that petitioners do not

own a majority of the property sought to be disconnected and, as such, petitioners lack standing to seek relief. We disagree with respondent. The statute clearly authorizes voters and owners of property to initiate proceedings to disconnect property from a fire protection district. The statute states that, whenever any property would receive greater benefit of service from another fire protection district, "any legal voter within such district or the owner or owners of such property may detach and disconnect such property from such fire protection district." 70 ILCS 705/15 (West 1996). The record reflects that petitioners are either legal voters or owners or both. Accordingly, the trial court was correct in denying respondent's motion to dismiss.

■ Respondent's next two issues focus upon the rulings of the trial court, and, as such, the standard of review we apply when a challenge is made to the trial court's ruling following a bench trial is whether the trial court's judgment is against the manifest weight of the evidence. *Bazydlo v. Volant*, 164 Ill. 2d 207, 215 (1995); *In re Gilman Community Fire Protection District*, 303 Ill. App. 3d 246, 248 (1999). A reviewing court will not reverse a trial court's decision merely because different conclusions can be drawn; an opposite conclusion must be clearly evident. *In re Gilman Community Fire Protection District*, 303 Ill. App. 3d at 246. This court gives great deference to the trial court's findings because the trial court, as the trier of fact, is in an optimum position to observe the demeanor of the witnesses while testifying, to judge their credibility, and to determine the weight their testimony and other evidence should receive. *Brody v. Finch University of Health Sciences/The Chicago Medical School*, 298 Ill. App. 3d 146, 153 (1998).

■ Respondent contends that the trial court erred in finding that the property at issue would receive a greater benefit of service from the Carpentersville FPD. Respondent also contends that the trial court erred in finding that disconnection would not impair the remaining district. The trial court specifically found:

> "While the [Rutland FPD] appears to be ably led and adequately equipped for an essentially volunteer department[,] the property sought to be disconnected would appear to receive greater benefit of service from the three stations, closer proximity, smaller geographic area of service and equipment and personnel of the full time fire department of the municipal corporation of which it is a part and with which it shares more and greater common interests.
>
> * * *
>
> Under the circumstances present in this case, it appears the [Rutland FPD] will not be impaired in its ability to render fully adequate fire protection services to the territory remaining after disconnection."

We have reviewed the record in this case and conclude that the trial court's findings were not contrary to the manifest weight of the evidence. The trial court's order clearly reflects that it considered the evidence concerning the services each fire protection district provides, the location of each station, the equipment, personnel, the service area, the response times of each department, and the projected loss of revenue as a result of disconnection. Indeed, when questioned about the impact of disconnection, Anderson of the Rutland FPD responded that there would be no impact upon the other full-time employees or intended equipment purchases.

*Schultz v. Atwood Fire Protection District*, 117 Ill. App. 3d 728 (1983), on which respondent relies, can be easily distinguished. In *Schultz*, the property at issue consisted of 97 acres of unimproved farmland. The reviewing court focused upon the type of equipment each station maintained and determined that the predominant factor in its decision was the ability to fight field fires. *Schultz*, 117 Ill. App. 3d at 730-31. In the present case, however, the property sought to be disconnected consists of subdivisions with numerous residential buildings. The Village maintains a water storage tank within the subject area. In making its determination, the trial court also noted the closer location and faster response time from the Carpentersville FPD, the concentrated service area that the Carpentersville FPD provides, the equipment, and the personnel. Based upon our review of the record, we cannot say that the opposite conclusion is clearly evident. Accordingly, we determine that the trial court's order was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

BOWMAN, P.J., and INGLIS, J., concur.